No. 59,783

STATE OF KANSAS, *Appellant*, v. MAX W. MILLER, *Appellee*.

(732 P.2d 756)

Opinion filed February 20, 1987.

*Kenneth R. Smith*, assistant district attorney, argued the cause, and *Robert T. Stephan*, attorney general, and *Gene M. Olander*, district attorney, were with him on the brief for appellant.

*Michael L. Harris*, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

PRAGER, C.J.: This is an appeal by the State on a question reserved, pursuant to the provisions of K.S.A. 1986 Supp. 22-3602(b)(3). The question arises from a ruling of the trial court that there was not a sufficient foundation for the admission into evidence of tests made on a substance claimed by the State to be marijuana.

The trial court's ruling occurred during trial of the defendant, Max W. Miller, on a complaint charging defendant with possession of marijuana (K.S.A. 65-4127b), possession of drug paraphernalia (K.S.A. 65-4152), and other charges not relevant here. Following the ruling of the court excluding the evidence, the two charges were dismissed on motion of the defendant.

The facts in the case are not greatly in dispute and essentially are as follows: On April 9, 1986, Officer Vaughn of the Shawnee County sheriff's department stopped the defendant's truck after a radar check indicated excessive speed in a 35-mile-per-hour zone on North Topeka Avenue in Shawnee County. The officer

placed the defendant Miller under arrest for driving under the influence of alcohol (K.S.A. 1986 Supp. 8-1567). After the arrest, the officer searched the truck. Inside a closed glove compartment, the officer discovered a 35mm film canister filled with green leafy vegetation. The canister and the substance contained therein were delivered to Officer Warrington, the crime scene technician and evidence officer for the Shawnee County sheriff's department. He conducted tests on the substance and concluded that it was marijuana.

The case was tried before a district judge sitting without a jury. Following the testimony of the arresting officer, Officer Warrington took the stand and identified State's Exhibit #1 as the package and substance contained therein which he had previously received. The officer testified that he ran chemical tests on it to determine the nature of the substance. He had been trained in a special course offered by the Kansas Bureau of Investigation which covered microscopic examinations and the various tests that are used to determine the existence of marijuana. Warrington had received a certificate from the KBI that he was qualified to perform such tests. He testified that he had performed in excess of 400 such tests since he had been certified. He described the tests which he had performed on the substance and was asked by the prosecutor to state his opinion as to the results which the tests disclosed. Counsel for the defendant objected to the admission of his opinion testimony on the basis that there was not a sufficient evidentiary foundation to permit Warrington to testify as to his ultimate conclusions.

The basis of defense counsel's objection was that before the officer could give his opinion as to the results of the tests, the State was obligated to lay a foundation to show that the tests made were generally accepted as reliable in the scientific community. The trial court sustained the objection, holding that Officer Warrington could not testify as to his conclusions derived from the tests without the testimony of a qualified witness that the methodology used in making the test was generally accepted in the scientific community. The prosecutor then requested a continuance which the court granted. A recess was taken, and the trial was resumed. The State then called to the witness stand Ronald L. Jones, the laboratory administrator for the Kansas

Bureau of Investigation (KBI). He had served in that capacity for twelve years. It was Jones's duty to oversee the various laboratory examinations and testing of physical evidence, including chemical drug analysis. Jones had a bachelor's degree in chemistry and a master's degree in science with special training in chemistry. He testified that he was fully familiar with the testing performed to identify marijuana and described the tests in detail. Essentially, there are three tests that are used in identifying marijuana:

(1) The Duquenois-Levine test which is a chemical test involving a color reaction indicating marijuana resins are present;

(2) The microscopic examination of the hairs located on the top and bottom of the leaf; and

(3) A thin layer chromatography test which measures the migration of a known substance through a solvent and compares that against the migration of the unknown substance being identified. If the migrations are identical, the substances are the same.

Jones explained the tests in some detail and further testified that the tests are reliable and are acceptable within the scientific community. Following the testimony of Jones, Officer Warrington again took the stand and described how he performed the three tests. Defense counsel again objected to the admission of Warrington's opinion testimony on the basis that there was no proper foundation for its admission. At that point, the trial court tentatively overruled the objection, and cross-examination by defense counsel followed.

On cross-examination of Warrington, he testified specifically as to the manner in which he had performed the tests. His testimony raised a serious evidentiary question as to whether two of the tests had been properly performed. As to the microscopic test, Warrington testified that he never made the crucial determination as to which was the top or the bottom of the leaf being examined as a basis of comparing the hairs located thereon. He, likewise, testified that he did not measure both the migration of the spotted substance and the migration of the solvent so that they could be compared. Thus, with respect to two of the tests performed by Warrington, the evidence indicated that the methodology used by Warrington differed from the

methodology customarily used by Mr. Jones at the KBI laboratory. The trial court sustained the objection of defense counsel and excluded the Warrington testimony as to the results of the tests on the basis that the evidence showed that Warrington did not perform the tests in a manner consistent with the methodology acceptable within the scientific community. The State then rested its case and, on motion of defendant, the trial court dismissed the two counts charging possession of marijuana and possession of drug paraphernalia. The State then took this appeal on a question reserved.

The basic question raised by the State on the appeal is whether the trial court erred in holding that the evidentiary foundation was insufficient to admit into evidence the results of the tests on the substance performed by Officer Warrington. The State argues that the evidentiary rule as to the admission of expert opinion testimony in the area of testing substances for drugs is not well established and that there is involved in this appeal a question of statewide interest vital to the administration of the criminal law. Hence, the State argues that the court should take jurisdiction and determine the appeal.

In his brief, counsel for the defendant challenges the jurisdiction of the Supreme Court to determine the issue on appeal. He first maintains that this court lacks jurisdiction to determine the appeal, because Count 1 of the complaint charging the offense of driving under the influence is still pending in the district court. We find no merit to this contention. The record shows that Count 1 was dismissed for refiling in the traffic division so that the diversion procedure could be utilized.

Defendant also maintains that the question reserved by the State involves only an evidentiary ruling of the trial court and that there is no question of statewide interest present to justify action by the Supreme Court. In this regard, the rule of evidence which governs the admission of expert opinion testimony is now well established in Kansas. In *State v. Washington*, 229 Kan. 47, 53, 622 P.2d 986 (1981), this court held that before expert scientific opinion may be received in evidence at trial, the basis of that opinion must be shown to be generally accepted as reliable within the expert's particular scientific field. In *Washington*, the court stated:

"The general test for determining the admissibility of a new scientific technique was enunciated in *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923). Simply stated, *Frye* requires that, before a scientific opinion may be received as evidence at trial, the basis of that opinion must be shown to be generally accepted as reliable within the expert's particular scientific field. Thus, according to the *Frye* standard, if a new scientific technique's validity has not been generally accepted or is only regarded as an experimental technique, then expert testimony based upon its results should not be admitted into evidence."

The opinion points out that the *Frye* test has been accepted as the standard in practically all of the courts of this country which have considered the admissibility of scientific evidence.

In *State v. Parson*, 226 Kan. 491, 601 P.2d 680 (1979), the question involved was the admission of the results of blood alcohol tests. We held that in order for expert testimony on the blood alcohol test to be admissible there must be an evidentiary foundation to show the acceptance of the testing procedure in the scientific and medical community as to the reliability of the particular testing method. It was held that sufficient foundation had been presented to justify the admission of the test presented in *Parson*.

The same general evidentiary rule is again recognized in *State v. Hodges*, 239 Kan. 63, 716 P.2d 563 (1986), where Syllabus ¶ 1 states the rule as follows:

"The basis for the admission of expert testimony is necessity, arising out of the particular circumstances of the case. Where the normal experience and qualifications of lay persons serving as jurors permit them to draw proper conclusions from given facts and circumstances, expert conclusions or opinions are inadmissible. Two requirements must be present before expert testimony is admissible at trial. First, the testimony must be helpful to the jury. Second, before expert scientific opinion may be received into evidence at trial, the basis of that opinion must be shown to be generally acceptable within the expert's particular scientific field."

Thus, under the Kansas cases, the evidentiary rule governing the admissibility of expert opinion testimony is well established.

In the present case, the record shows that Mr. Jones, laboratory administrator of the KBI, testified without equivocation that the three tests he described were generally accepted as reliable in the scientific community for the identification of marijuana. This evidence was clearly sufficient to provide the necessary foundation to show the reliability of the tests. The trial court so ruled

and properly so. In this case, however, the basis of the trial court's exclusion of the tests conducted by Officer Warrington was that Warrington did not perform two of the tests in a manner which followed the prescribed procedure. The record shows that there was a reasonable basis for the trial court's ruling and that the trial court did not abuse its discretion in excluding the testimony. The evidence raised a fact question whether the tests were properly conducted.

The State argues on this appeal, in effect, that the courts of Kansas should take judicial notice of the general reliability of the three-test method used in identifying marijuana. The State points out that judicial notice is now taken of the general reliability of radar mounted in a stationary or moving vehicle to measure the speed of motor vehicles without requiring expert testimony showing the nature and function of or the scientific principles underlying the device. *State v. Primm,* 4 Kan. App. 2d 314, 606 P.2d 112 (1980). Throughout this country today, the courts generally take judicial notice of the general reliability of radar when used to measure the speed of motor vehicles. See Annot., 47 A.L.R.3d 822 at 831, which cites many cases in various jurisdictions holding that judicial notice should be taken of the general reliability of radar speed devices to measure the speed of motor vehicles.

In the present case, the State did not raise in the trial court the issue whether judicial notice should be taken of the reliability of the three-test method used in identifying marijuana. Nor was there any showing made by the State that the three-test method is so generally acceptable throughout the scientific community in this country that the Kansas courts should take judicial notice of the reliability of the test and thus avoid the necessity of laying a foundation to show the acceptance of the three-test method in the scientific community.

In passing, we note that there was no evidence presented that the KBI has distributed a manual which sets forth with particularity the methods to be followed by local officers in testing for the presence of marijuana. Simply stated, the record does not establish a general acceptance of the three-test method for identifying marijuana in the scientific community so as to justify this court in establishing a rule of evidence which permits judicial notice to be taken of such tests.

On the basis of the evidentiary record before us, we hold that the trial court did not err or abuse its discretion in holding that the evidentiary foundation in this case was insufficient to admit the results of the tests for marijuana made by Officer Warrington.

The appeal of the State is denied.