Bobby Dean TODD, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 7983.

United States Court of Appeals
Tenth Circuit.

May 3, 1965.

Richard D. Lamm, Denver, Colo., for appellant.

Jack R. Parr, Oklahoma City, Okl. (B. Andrew Potter, U. S. Atty., with him on brief), for appellee.

Before MURRAH, Chief Judge, and LEWIS and SETH, Circuit Judges.

MURRAH, Chief Judge.

The appellant, Bobby Dean Todd, was convicted by a jury on all six counts of an indictment alleging the violation of three federal narcotics laws, i. e. 26 U.S. C. §§ 4744(a) (1), 4755(a) and 4742(a). He was sentenced, as a second offender, to fifteen years on each count to run concurrently. From a denial of his motions for new trial and reduction in sentence, appellant brings this appeal asserting prejudicial error in (1) the Court's refusal to give his requested cautionary instructions on the informer's testimony; (2) restriction of the cross-examination

**300**

of the informer; and (3) failure of counts II, III, IV and VI to cite the specific statute alleged to have been violated. See Rule 7(c) F.R.Crim.P.

■ Though unwilling to outlaw government use of informers and their kin as "dirty business" in which the sovereign ought not to indulge, the Courts have recognized the serious questions of credibility inherent in the use of such witnesses. To make sure they are properly identified for what they are in the scheme of the administration of criminal justice we allow wide latitude in cross-examination and submit the issue of credibility "to the jury with careful instructions." See On Lee v. United States, 343 U.S. 747, 757, 72 S.Ct. 967, 96 L.Ed. 1270.[1] Thus, if the incriminating testimony of an informer is uncorroborated or unsubstantiated, special cautionary instructions are surely required. See Orebo v. United States, 9 Cir., 293 F.2d 747; Joseph v. United States, 5 Cir., 286 F.2d 468; United States v. Masino, 2 Cir., 275 F.2d 129. If such testimony is corroborated in critical respects, we nevertheless favor careful instructions in form and substance calculated to call attention to the character of the testimony of the informer, leaving to the jury the ultimate question of value and credibility. There is no ritual of words, and abstract instructions are usually beamed to the appellate court rather than to the jury. The sufficiency of the instructions depends upon other incriminating circumstances of the case tending to corroborate the informer. See Dunn v. United States, 318 F.2d 89, 93; Joseph v. United States, supra.

In our case the informer testified that two or three days prior to Saturday, November 30, 1963, he had a conversation with appellant in which he asked "if he could get some (marijuana) and he said yes, but it would be Saturday before he could get it." There was corroborative evidence to the effect that on the day the sale was to take place, the informer called a Federal Narcotics Agent and told him about the offer. Later that day, the agent and an Oklahoma City Police Officer came to the informer's house, searched him and gave him a $20 bill. The informer then called appellant and told him he "had the money for the marijuana and if he would come over I'd give it to him". According to the informer, appellant answered that "he would be over". The officers and informer waited in the informer's house until immediately before appellant arrived when the officers stepped into a back room, apparently where they could not hear the parties' conversation. The informer testified that appellant stated it would be several hours before he could get the marijuana, and they made arrangements to meet later at a "lounge" where the sale would take place. As soon as the appellant left, the officers again seached the informer thoroughly and found that he did not have the $20 bill.

Later the same evening the informer went to the "lounge" while the officers remained in a parked automobile near the entrance. The informer testified that inside the lounge he told the appellant he would rather not take the marijuana there because "they were having trouble and I was afraid the police might come"; that they walked outside the bar and "I told him I'd go to my house and for him to meet me there in about thirty minutes." At that time the officers were parked approximately 30 feet away. The informer then started to his house, and when he arrived the officers were waiting. They all went into the house and the informer was again searched. The informer then called for appellant at the lounge, but was unable to contact him. After having appellant paged, the informer talked to a Goerge Maxey who,

1. Mr. Justice Black apparently would reject the testimony of informers as a matter of policy. See Comment, On Lee v. United States, supra, p. 758, 72 S.Ct. 967. Mr. Justice Frankfurter dissenting stated that a criminal prosecution "should not be deemed to be a dirty game in which 'the dirty business' of criminals is outwitted by 'the dirty business' of law officers." Id., p. 758, 72 S.Ct. p. 974.

after a short time, drove up in front of the informer's house and honked the horn. The officers observed the informer leave the house and go across the street to Maxey's car where he received a "package". Almost immediately thereafter, appellant arrived in another automobile, and the officers heard appellant ask the informer if he "got it". After the two cars left, the informer returned to the house and handed the officers a tobacco can, the contents of which was later found to be marijuana.

As to the second transaction, the corroborated evidence was to the effect that on the afternoon of January 4, 1964, the informer again contacted the Federal Narcotics Agent concerning appellant's offer to sell him marijuana. That evening the agent and another officer went to the informer's house and gave him another $20 bill. They all waited in a government car parked in front of the informer's house until the appellant arrived. The informer went straight to appellant's car, handed him the money and received a paper sack, also found to contain marijuana.

Cross-examination of the informer revealed that he was a narcotic user and that he had been convicted of robbery with fire arms, escape from prison and consorting with persons of lewd character. But, his testimony was not impeached or otherwise discredited.

Without referring to this particular witness the trial court instructed the jury abstractly that "In considering the testimony of a witness who had been convicted of an offense you should consider such fact of conviction as it may or may not in your judgment affect the weight or credit you will give the testimony of such witness." The trial court also generally told the jury in conventional language that they were "the sole judges of the credibility of the witnesses and the weight their testimony deserves. * * * You should carefully scrutinize the testimony given upon circumstances under which each witness has testified and every matter in evidence which tends to indicate whether the witness is worthy

of belief. * * * In determining such weight or credit, you may consider the interest, if any, which a witness may have in the result of the trial, the relation of the witness to the parties, the bias or prejudice if any has been apparent, the candor, fairness, intelligence and demeanor of the witness * * *."

The trial court refused to give the requested cautionary instruction because there was "considerable corroboration of the informer in this case and the entire case does not depend upon the testimony of the informer" and that "the instruction given relating to credibility of the witness is ample and proper to cover the testimony of the informer."

While it would have been permissible, even desirable, to call attention to the fact that the government's case is based in part upon the credibility of testimony of an informer of unsavory character, in view of the very substantial corroboration in this case we cannot say it was reversible error for the Court to refuse the requested instruction.

After defense counsel had fully developed the informer's record as a narcotic user, robber, escapee and consorter with persons of lewd character, counsel seemed to want to dwell upon the background of his use of narcotics. The government objected on the grounds that, "He's gone into it very thoroughly and this man has admitted he has used narcotics." The trial court agreed and suggested, "Let's get on to something else". There is nothing in the record to indicate that the trial court unduly curtailed the cross-examination of the witness concerning matters relating or affecting his credibility. See Foster v. United States, 10 Cir., 282 F.2d 222.

The indictment shows that a line had been drawn through the citations of the specific statute, violation of which each count charged. Counts I and V had been interlineated to allege "violation of the laws of the United States". The citations through which the line was drawn were correct, but the record does not indicate who drew the lines or why

they were drawn. It is suggested that perhaps the trial court drew them to facilitate preparation of instructions. Whatever may have been the reason, there is no indication that appellant was misled to the prejudice of his defense either in the trial court or on appeal.[2] Appellant received a carbon copy of the indictment over three months prior to the date of trial. He did not complain of any difficulty understanding the charges in his request for a bill of particulars, his two motions for new trial or in his subsequent letter to the trial court.

Judgment is affirmed.

---

2. Rule 7(c) F.R.Crim.P. provides in part, " * * * The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice."