(802 P.2d 599)

No. 64,594

STATE OF KANSAS, *Appellee*, v. HARRY JENE FULLER, *Appellant*.

Opinion filed November 30, 1990.

*Michael L. McCoy*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Eric Godderz*, assistant county attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before DAVIS, P.J., GERNON, J., and RALPH M. KING, JR., District Judge, assigned.

DAVIS, J.: Defendant Harry Jene Fuller appeals his conviction for sale of marijuana (K.S.A. 65-4127b[b][3]) on the grounds that (1) the trial court erred by admitting the results of marijuana

identification tests without requiring sufficient foundation and (2) the trial court erred in refusing to give a cautionary instruction regarding the testimony of a paid confidential informant. We reverse and remand on both issues.

The defendant was convicted of selling marijuana to a confidential informant for the Salina Police Department. S.B. testified that he called Detective Michael Marshall, his police contact, after setting up the buy. Marshall met S.B. at a park, searched S.B. and his car, and equipped S.B. with a wire.

Detective Marshall followed S.B. in a separate car to the defendant's home. Marshall lost sight of S.B. only while Marshall was parking his car. S.B. testified that he went inside the defendant's home and told the defendant he wanted to buy marijuana. S.B. made the purchase after a short discussion over price.

Detective Marshall testified that he was parked approximately 150 to 200 feet from the defendant's mobile home during the buy and could not see the front door of the defendant's home. The wire did not work while S.B. was inside conducting the buy, so Marshall relied on S.B.'s account of the buy.

S.B. testified that after he left the defendant's home, he drove to a local airport followed by Detective Marshall. S.B. handed Detective Marshall the bag of marijuana, which was later introduced into evidence, and the change from the buy. Detective Marshall searched S.B. and his car.

S.B. testified that he had agreed to work as a confidential informant after he was arrested for selling drugs. He had agreed to make undercover buys and testify at trial for the police department. The drug charges against S.B. were dropped after he made a couple of buys. At the time of trial, S.B. had made over twenty buys for the police. After he had made a few buys, the police began to pay S.B. for each buy. At first the police paid him $25; later they paid $50.

S.B. further testified on cross-examination that he had a history of drug use and treatment, including use after his arrest, but not while he was working as an informant. He also had a bad check conviction for which he had paid restitution.

Lieutenant Harold Bonawitz testified that he had tested the contents of the bag using techniques he learned at a four-day training session held by the Kansas Bureau of Investigation. At

the time of trial, Bonawitz had tested over 200 marijuana samples. and testified as an expert in marijuana identification between 100 and 150 times. Lieutenant Bonawitz testified about the marijuana testing procedures and positive test results in this case. At trial, the defendant objected to Bonawitz's qualifications to testify as to the reliability of the testing procedure he had used and the results of the tests.

The defendant did not testify. In addition to Sergeant Soukup, who was called to verify chain of custody, the State called three witnesses: S.B., Detective Marshall, and Lieutenant Bonawitz. At the close of the testimony, the defendant requested a confidential informant jury instruction, which the trial court rejected.

The foundation for admissibility of marijuana identification tests.

Defendant argues that the trial court allowed the State to introduce the results of the marijuana tests without requiring it to establish that the tests are generally accepted as reliable within the scientific community. The State argues that sufficient foundation was established for the admission of the marijuana tests.

The general test for admission of scientific evidence was established in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), which was later adopted by Kansas in *State v. Lowry*, 163 Kan. 622, 629, 185 P.2d 147 (1947). The *Frye* test requires that, "before expert scientific opinion may be received in evidence at trial, the basis of that opinion must be shown to be generally accepted as reliable within the expert's particular scientific field." *State v. Miller*, 240 Kan. 733, 736, 732 P.2d 756 (1987).

K.S.A. 60-456(b) is a further limitation on the introduction of scientific opinion. Testimony by expert witnesses is limited to the "scope of the special knowledge, skill, experience or training possessed by the witness." K.S.A. 60-456(b)(2). The fact that a person is qualified to testify as to the results of a test does not necessarily qualify that person to testify about the reliability of the test in general. See *Miller*, 240 Kan. at 734-35.

*Miller* involved an appeal by the State on a question reserved, pursuant to K.S.A. 1986 Supp. 22-3602(b)(3). The defendant in *Miller* had been charged with possession of marijuana and drug paraphernalia. 240 Kan. at 733. The prosecution had relied on marijuana identification techniques similar to those used in the

present case. At trial, the defense objected to testimony by the officer who had performed the tests on the grounds that the State had not laid sufficient foundation. The defense argued that the State had to first prove that "the methodology used in making the test was generally accepted in the scientific community." 240 Kan. at 734.

The trial court in *Miller* sustained defendant's objection and required the State to present a qualified expert to testify as to the reliability of the tests. After a recess, the State called the laboratory administrator for the Kansas Bureau of Investigation to testify that the tests were reliable and generally accepted in the scientific community. 240 Kan. at 734-35. The court then allowed the testing officer to continue.

While the testing officer's qualifications to testify as to the reliability of the marijuana tests were not directly at issue in the *Miller* case, *Miller* cites with approval the *Frye* test. *State v. Miller*, 240 Kan. at 736.

The State in this case failed to establish that Lieutenant Bonawitz was qualified to testify as an expert in the field of marijuana identification techniques or as to the general acceptance of the marijuana identification techniques used by him. The State did little more than introduce Bonawitz and then ask him whether the tests he used were generally recognized as the standard tests for the identification of marijuana. Bonawitz testified that he had 16 years' experience with the police department as a shift supervisor and as a firearms, handgun, and self-defense instructor, and does marijuana analysis for the department. Bonawitz took a four-day course in marijuana identification at the Kansas Bureau of Investigation and has examined over 250 samples and testified between 100 and 150 times as an expert in marijuana identification.

The defense correctly argues that Bonawitz was only qualified to testify as to the operation of the tests. Bonawitz is not qualified to testify that the tests he used were generally accepted as reliable in the scientific community as required by *Frye*. In his testimony, Bonawitz answered that the techniques he used were "standard." However, "standard" is not synonymous with "reliable." Under these circumstances, the State did not establish that Bonawitz had the background or knowledge on which he could have based

an opinion as to the reliability of the test as required by *Frye* and K.S.A. 60-456(b)(2). Accordingly, the trial court erred by allowing the test results into evidence.

The State further argues that admission of the evidence does not require reversal if we are willing to take judicial notice of the reliability of the marijuana identification techniques employed by the State. In selected cases, scientific technique is "'so broadly and generally accepted in the scientific community that a trial court may take judicial notice of its reliability. Such is commonly the case today with regard to ballistics tests, fingerprint identification, blood tests, and the like.'" *Tice v. Richardson*, 7 Kan. App. 2d 509, 511, 644 P.2d 490 (1982) (quoting *State v. Washington*, 229 Kan. 47, 53, 622 P.2d 986 [1981]). The fact that the trial court did not take judicial notice does not preclude an appellate court from doing so. *State v. Wolfe*, 194 Kan. 697, 698, 401 P.2d 917 (1965).

Kansas has not taken judicial notice of the reliability of marijuana testing. In *Miller*, the court discussed judicial notice of the reliability of marijuana testing. *Miller*, 240 Kan. at 738-39. Rejecting the idea that judicial notice could be taken of the reliability of such tests, *Miller* said that the State had made no showing that the method was "so generally acceptable throughout the scientific community in this country that the Kansas courts should take judicial notice of the reliability of the test and thus avoid the necessity of laying a foundation." 240 Kan. at 738. The record in this case establishes the State made no showing that the tests used were so generally accepted that the court should take judicial notice of the reliability of the tests.

The majority of states considering this question, like Kansas, admit marijuana testing only after a foundation is laid for the introduction of the results of the test. See, *e.g.*, *People v. Escalera*, 143 Misc. 2d 779, 786, 541 N.Y.S.2d 707 (N.Y. Crim. Ct. 1989) (long discussion of the evidence each side presented in briefs for the admission or exclusion of the results of Duquenois-Levine marijuana identification test); *People v. Jackson*, 134 Ill. App. 3d 785, 481 N.E.2d 1222 (1985); *State v. Williams*, 471 So.2d 255 (La. App. 1985); *State v. Shelli*, 675 S.W.2d 79 (Mo. App. 1984). Contra *State v. Tate*, 300 N.C. 180, 265 S.E.2d 223 (1980) (trial court rejected Duquenois-Levine test, saying it was not generally accepted as reliable).

We conclude that *Miller* controls and do not take judicial notice of the reliability of marijuana identification tests. We further conclude that the trial court abused its discretion by admitting Lieutenant Bonawitz's testimony on the results of the tests without a proper foundation. As Kansas courts have pointed out many times in the past, "lay jurors tend to give considerable weight to 'scientific' evidence presented by 'experts.' " See, *e.g.*, *State ex rel. Hausner v. Blackman*, 7 Kan. App. 2d 693, 698, 648 P.2d 249 (1982), *aff'd* 233 Kan. 223 (1983). This evidence "carries the mantle of impartial physical, or objective, fact." 7 Kan. App. 2d at 698. Additionally, "[i]t is the general acceptance in the expert's particular field of science which assures the validity of the scientific evidence." *Tice v. Richardson*, 7 Kan. App. 2d at (510-11).

Cautionary instruction regarding the testimony of a confidential informant.

The defendant argues that the trial court erred by refusing to give a cautionary instruction regarding the testimony of the confidential informant. The State argues that a cautionary instruction would only be necessary in the case of an accomplice's testimony.

The standard of review for criminal appeals involving jury instructions depends on whether the defendant objected to the instructions at trial. See *State v. DeMoss*, 244 Kan. 387, 391-92, 770 P.2d 441 (1989). "When a trial court refuses to give a specific instruction, the appellate court must view the evidence in the light most favorable to the requesting party." *State v. Hickey*, 12 Kan. App. 2d 781, 784, 757 P.2d 735, *rev. denied* 243 Kan. 781 (1988). While there are no reported Kansas cases discussing the necessity of giving a cautionary instruction for a confidential informant's testimony, we conclude that the trial court errs in refusing to give the instruction when, as here, there is a request for such an instruction and when the informant's testimony is uncorroborated and provides the sole basis for defendant's conviction.

The courts that have considered this question have reversed convictions for failure to give cautionary instructions where there was a lack of corroboration of the informant's testimony. In *United*

States v.. Garcia, 528 F.2d 580 (5th Cir. 1976), the court reversed the conviction of a defendant where the informant's testimony was the only evidence incriminating the defendant. The fact that the jury had heard evidence attacking the credibility of the witness did not diminish the need for cautionary instructions. 528 F.2d at 587-88. Instead, the court said that such information "cast a dark shadow on the credibility of [the] witness," giving further support to the need for cautionary instructions. 528 F.2d at 588.

In Smith v. State, 485 P.2d 771 (Okla. Crim. 1971), the court reversed a drug conviction where the informer's testimony was uncorroborated. The informant in Smith was searched, given money to make a buy from the defendant, and driven to within one-half block of the cafe where the buy allegedly took place. The informant returned with a package that contained drugs. The defendant's defense, which was supported by two witnesses, was that he was elsewhere at the time of the alleged buy. The State had no other witnesses who saw. the defendant in the cafe. The court noted that the credibility of the informant had been questioned at trial, giving further support for a cautionary instruction. The court held that the failure to provide a cautionary instruction when there was no corroboration of the informant's testimony was plain error. 485 P.2d at 773.

In Todd v. United States, 345 F.2d 299, 300-01 (10th Cir. 1965), the court held that lack of cautionary instructions was not reversible error, although they would have been desirable, where testifying police officers witnessed the transfer of drugs from a distance and the informant's credibility was attacked on cross-examination. 345 F.2d at 301. See James v. State, 105 Nev. 873, 875, 784 P.2d 965 (1989); see also State v. Spurr, 115 Idaho 898, 771 P.2d 916 (Ct. App. 1989) (informant's testimony was corroborated by tape recordings and in-person conversations during which the drug sales were arranged and transacted and informant's credibility was attacked; cautionary instruction not required).

In this case, the State failed to provide corroborating evidence to support the confidential informant's testimony. While Detective Marshall searched the confidential informant before and after the alleged buy and kept him in view during most of the time between the searches, he did not witness the actual transaction.

The wire planted on the informant did not work. The defendant's conviction is based solely on the testimony of a paid informant. The defendant was allowed to attack the credibility of the informant on cross-examination, but, as noted above, such attacks may further support the giving of a cautionary instruction.

The State argues that the need to give a cautionary instruction arises only in the case of accomplice testimony. Motive to shift blame is present when an accomplice testifies but is not present when an informant testifies. While we acknowledge the difference between the motives of an accomplice and an informant, we base our decision not on that difference, but rather on the fact that defendant's conviction in this case is based solely on the testimony of a paid informant. Under these circumstances, and given the fact the defendant requested a specific instruction, we conclude that the court erred in refusing to give a cautionary instruction regarding the testimony of the confidential informant.

The State further argues that this court has rejected the use of cautionary instructions in *State v. DeVries*, 13 Kan. App. 2d 609, 780 P.2d 1118 (1989). *DeVries* involved the use of a cautionary instruction which unduly focused on the credibility of the defendant, who was the sole witness on his own behalf. 13 Kan. App. 2d at 618. *DeVries* has no application to this case.

Reversed and remanded.