(837 P.2d 1327)

No. 66,546

STATE OF KANSAS, *Appellee,* v. ALAN NOVOTNY, *Appellant.*

Opinion filed August 28, 1992.

*Vernon Keller,* legal intern, Kansas Defender Project, of Lawrence, and *Jessica R. Kunen,* chief appellate defender, of Topeka, for appellant.

*Thomas R. Stanton,* assistant county attorney, *Julie McKenna,* county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before BRAZIL, P.J., ELLIOTT and PIERRON, JJ.

PIERRON, J.: The defendant, Alan Novotny, was convicted of sale of methamphetamine, a felony, and two misdemeanor drug offenses. He appeals his conviction for the sale of methamphetamine, alleging that the trial court erred in not giving a cautionary instruction to the jury about the credibility of a paid undercover informant who testified for the State. We reverse and remand for a new trial.

Robert Currie lived across the street from Novotny. Novotny testified he and Currie were good friends. Currie stated he and Novotny had an ongoing relationship. After a break-in at a local car dealership, Currie was questioned by the Salina Police Department. During the questioning the detective made Currie aware of the undercover program they had. Currie eventually contacted the detective in charge of the program and became active with the Salina Police Department as an undercover agent making drug buys. Currie testified the reason he was questioned about the break-in at the car dealership was that he had traded in a car and purchased another car through that dealership. He testified he was never charged with any criminal offenses in connection with the break-in.

In September 1989, Currie began working for the Salina Police Department in an undercover capacity. His job was to set up drug buys and then inform the police so they could control the situation and make tapes for later use in trial. He testified he received $100 per buy for potent narcotics such as cocaine or methamphetamine and $50 per buy for less than a quarter pound of marijuana. For buying more than a quarter pound of marijuana, he received $100.

Currie testified that because Novotny wore Harley Davidson jackets and had long hair, he thought he might be involved with drugs. Currie had told Novotny if he had access to or was selling drugs, Currie would be interested in purchasing some. Currie testified that on October 8 Novotny stopped by his house and asked if he wanted to buy some methamphetamine. Currie said he would, but would have to see if he could get the cash. He then attempted to contact Detective Marshall, his contact at the Salina Police Department. Once he made contact with Marshall, Currie set up the buy for a gram and a quarter of methamphetamine for $150.

Currie met with Detective Marshall, who searched Currie and his car. Currie was wired so that the police could listen to the buy to gather evidence and to protect him if necessary. Once he was searched and wired, Currie proceeded to Novotny's house while Marshall followed him in another car.

Once Novotny opened the door, the transcript of the recording reads as follows:

"Currie: Hey, dude. Presently in shower. Got the shit? 20, 40, 60, 80, 100, 10, 20, 30, 40, 60, 80, 100, 10, 20, 30, 40, 50. I'm out of here. Holler at you later on man. Thanks Alan.
"Novotny: Yep."

Currie then testified that Novotny approached him later on October 8 after he had returned home and stated he had some more "crank" he was willing to sell. Again, Currie stated he would have to see if he could get the cash and he would get back to him. Currie contacted Marshall on the following day and told him about the potential deal. Marshall told him to set it up and contact him again. Currie contacted Novotny and set the deal up for two and one-half grams of methamphetamine for $220. Currie was again met by Marshall; Currie and his car were searched, and Currie received the bodypack wire. Currie drove to Novotny's house while Marshall followed in his car. The transcript of the meeting is as follows:

"Novotny: Who is it?
"Currie: The law.
"Novotny: . . . don't give me no fucking shit man . . . comes over.
"Currie: I'm kind of in a hurry man. Like I'm on the move. 20, 40, 60, 80, 90, 1, 10, 20, 30, 40, 50, 60, 70, 80, 90, 2, 20. Talk to you later. I'll probably yell at you in a while.
"Novotny: I'm going to go get some smoke now.
"Currie: Alright. Well I'll check back with you.
"Novotny: Okay.
"Currie: Talk to you later."

Marshall testified he kept Currie under surveillance except when Currie approached the door of the apartment. At that point and while he was in Novotny's apartment, he was out of Marshall's view for a brief period of time. Marshall testified Currie was searched both prior to and after the drug deal and there were no irregularities in those searches.

The substances Currie turned over to the police officer as having been bought from Novotny were tested and the substance from October 8 was determined to be methamphetamine.

The substance from October 9 was determined to be a non-controlled substance.

Currie testified he was involved in approximately 30 to 35 undercover arrests. Currie also testified he had received between $2,500 and $3,500 as compensation for his undercover involve-

ment with the police department. Marshall confirmed Currie had received approximately $3,000 for his undercover work.

Novotny testified he had an ongoing relationship with Currie and he and Currie had done drugs together, including methamphetamine. Novotny and Currie had been neighbors since sometime in the summer when Novotny moved across the street from Currie. According to Novotny, they developed a close relationship rather quickly, with Currie coming over to Novotny's house nearly nightly. Novotny testified that while he and Currie did drugs together, he was not selling drugs and the circumstances on October 8 and 9 were very different than what Currie had testified to. According to Novotny, Currie had sold him a car, which Novotny bought sight unseen because he and Currie were good friends and because he believed the car was a good deal. When Currie did not bring the car to Novotny (it was in another city), Novotny began to get anxious and demanded that Currie get the car for him or get him his money back, or Currie would get hurt. According to Novotny, Currie attempted to repay part of the money that he owed Novotny with drugs. Novotny refused the offer and told Currie to give him the money.

Currie told Novotny someone he knew would buy the drugs and asked to leave the drugs at Novotny's house because Currie was afraid he would use the drugs himself if they were accessible. Novotny also testified that Currie frequently left things at his house so Currie's girlfriend would not find them. Novotny claims Currie then went to the police, was searched and wired, returned with money for Novotny for the car deal, and left with the drugs that Novotny claims were those which Currie had left at his house for safekeeping.

Currie did not deny that he had sold Novotny a car that was located in another city, that Novotny had never received the car from Currie, and that Currie had never forwarded title to Novotny. Novotny testified he also bought a car from Currie in November 1989 prior to being arrested and that Currie made up for his loss of money on the first car by making a good deal on the second car. Currie denied having sold him the second car.

Novotny was charged with and convicted of possession of marijuana and possession of drug paraphernalia. He admitted possessing the marijuana and smoking it, and he admitted having

possessed all of the paraphernalia items except the triple beam scales. He testified the scales found under his bed actually belonged to Currie, Currie had brought them over because they were not working right, and the two of them had tried to fix the scales. Novotny alleged Currie brought the scales over because he knew a search warrant was about to be executed. The police officer testified he found the scales in Novotny's bedroom and that these scales are commonly used to weigh marijuana. The paraphernalia and marijuana were found when an arrest warrant was issued and executed early in the morning on November 22. The misdemeanor convictions for possession of paraphernalia and possession of marijuana have not been contested on appeal.

Novotny was also convicted of sale of methamphetamine in violation of K.S.A. 1989 Supp. 65-4127b(b)(3). He was found not guilty of representation of a noncontrolled substance as a controlled substance. He was sentenced to 3 to 10 years for the felony conviction, to run concurrent with the sentences imposed for the misdemeanors, and was placed on 5 years' probation. He timely appeals his conviction for the sale of methamphetamine.

The issue before us is whether the district court erred in failing to give a cautionary instruction about a paid informant's testimony even though not requested to do so by the defense.

Because defense counsel did not request or object to the failure to give a special cautionary instruction on the credibility of a paid government informant, an appellate court may reverse only if the instructions given are clearly erroneous. K.S.A. 22-3414(3). "The failure to give an instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility the jury would have returned a different verdict." *State v. DeMoss*, 244 Kan. 387, 392, 770 P.2d 441 (1989) (quoting *State v. Patterson*, 243 Kan. 262, 268, 755 P.2d 551 [1988]).

Because no instruction was requested and no objection was lodged to the failure to give the instruction, we must determine whether the failure to give the instruction by the trial court was clearly erroneous. Is it a real possibility that the jury would have returned a different verdict had the instruction been given? There is no Kansas case law directly on point, but there is some precedential case law from which we may draw guidance.

*State v. Fuller,* 15 Kan. App. 2d 34, 802 P.2d 599 (1990), *rev. denied* 248 Kan. 997 (1991), discusses whether jury instructions on confidential informants are required in certain circumstances. In *Fuller,* the confidential informant's identity was not revealed even though he testified. The informant in *Fuller* was subjected to cross-examination, and it was learned he had been arrested for selling drugs and had subsequently agreed to make undercover buys and testify at trial for the police department. As a result of his cooperation, the drug charges against him were dropped. It also was revealed he had a history of drug use and treatment, including use after his arrest but not while he was working as an informant. The Court of Appeals held in *Fuller:*

"While there are no reported Kansas cases discussing the necessity of giving a cautionary instruction for a confidential informant's testimony, we conclude that the trial court errs in refusing to give the instruction when, as here, there is a request for such an instruction and when the informant's testimony is uncorroborated and provides the sole basis for defendant's conviction." 15 Kan. App. 2d at 39.

In *Fuller,* the Court of Appeals reviewed some recent cases discussing when a cautionary instruction is necessary. The court reviewed *United States v. Garcia,* 528 F.2d 580 [5th Cir.], *cert. denied* 429 U.S. 898 [1976]), and found that

"[t]he fact that the jury had heard evidence attacking the credibility of the witness did not diminish the need for cautionary instructions. [Citation omitted.] Instead, the court said that such information 'cast a dark shadow on the credibility of [the] witness,' giving further support to the need for cautionary instructions. [Citation omitted.]" 15 Kan. App. 2d at 39-40 (quoting *Garcia* 528 F.2d at 588.)

The Court of Appeals also reviewed *Smith v. State,* 485 P.2d 771 (Okla. Crim. 1971), where the Oklahoma court reversed a drug conviction because the informant's testimony was uncorroborated. Our court said:

"The informant in *Smith* was searched, given money to make a buy from the defendant, and driven to within one-half block of the cafe where the buy allegedly took place. The informant returned with a package that contained drugs. The defendant's defense, which was supported by two witnesses, was that he was elsewhere at the time of the alleged buy. The State had no other witnesses who saw the defendant in the cafe. The court noted that the credibility of the informant had been questioned at trial, giving further support for a cautionary instruction. The court held that the failure

to provide a cautionary instruction when there was no corroboration of the informant's testimony was plain error." [Citation omitted.] 15 Kan. App. 2d at 40.

The court also looked at three cases where the informant's credibility was attacked on cross-examination and much of the informant's testimony was corroborated by other evidence. In those cases, the courts held that a lack of cautionary instructions was not reversible error although such instructions would have been desirable. Those cases were *Todd v. United States*, 345 F.2d 299 (10th Cir. 1965); *State v. Spurr*, 115 Idaho 898, 771 P.2d 916 (Ct. App. 1989); and *James v. State*, 105 Nev. 873, 784 P.2d 965 (1989).

In *Fuller* we found that because the State had failed to provide corroborating evidence (the wire planted on the informant did not work), the confidential informant's testimony was not corroborated. Even though the detective had searched the confidential informant before and after the alleged buy and had kept him in view during most of the time between the searches, he did not actually witness the transaction. The court said:

"The defendant's conviction is based solely on the testimony of a paid informant. The defendant was allowed to attack the credibility of the informant on cross-examination, but, as noted above, such attacks may further support the giving of a cautionary instruction.

"The State argues that the need to give a cautionary instruction arises only in the case of accomplice testimony. Motive to shift blame is present when an accomplice testifies but is not present when an informant testifies. While we acknowledge the difference between the motives of an accomplice and an informant, we base our decision not on that difference, but rather on the fact that defendant's conviction in this case is based solely on the testimony of a paid informant. Under these circumstances, and given the fact that the defendant requested a specific instruction, we conclude that the court erred in refusing to give a cautionary instruction regarding the testimony of the confidential informant." 15 Kan. App. 2d at 41.

The question in this case is different because Currie's identity was revealed at trial and the cautionary instruction was not requested. Since the cautionary instruction was not requested, we must determine whether the failure to give an instruction was clearly erroneous and whether the jury would have reached a different result had a cautionary instruction been given.

We should note that the jury was instructed about credibility of witnesses in general in the following instruction. "It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified."

Other than *Fuller*, Kansas case law does not provide much precedent. We have reviewed some of the Kansas cases on accomplice testimony to determine when it is error for a court to fail to give an instruction advising the jury to treat the testimony of an accomplice with caution. In *State v. Reed*, 8 Kan. App. 2d 615, 619-20, 663 P.2d 680 (1983), a cautionary instruction about accomplice testimony was not requested and the appellate court found failure to give it was not clearly erroneous:

"In *State v. Moore*, 229 Kan. 73, 80, 622 P.2d 631 (1981), our Supreme Court found that when a cautionary instruction is refused, the extent of corroboration for the accomplice testimony determines the extent of the prejudice, but it did not find that to fail to give such an instruction *sua sponte* would be reversible error. Even if Reed had requested the instructions, Bouser's testimony concerning Reed's involvement was substantially corroborated. Gallagher testified that he saw Reed in the house and running from the scene. Reed was found by the police in the immediate vicinity just after the burglary breathing heavily as if he had just exercised strenuously. In sum, the testimony of Bouser was sufficiently corroborated to render the failure to give a cautionary instruction harmless error."

Generally, the court found that where the defendant requests a cautionary instruction on the testimony of an accomplice, the accomplice's testimony is substantially uncorroborated, and the accomplice's testimony provides the main basis for defendant's conviction, it is error for the trial court to refuse to give such an instruction.

In other jurisdictions, the failure to give a cautionary instruction about an informant's testimony is generally held not to be plain error, whether or not requested, if the testimony is corroborated. See *United States v. Robertson*, 706 F.2d 253 (8th Cir. 1983); *Todd v. United States*, 345 F.2d 299; *Joseph v. United States*, 286 F.2d 468 (5th Cir. 1960), *cert. denied* 372 U.S. 979 (1963); *State v. Spurr*, 115 Idaho 898; and *James v. State*, 105 Nev. 873.

In both *Todd* and *Joseph*, while the cautionary instruction was requested but not given, the instruction that was given was sig-

nificantly more detailed than the instruction that was given in the instant case.

*United States v. Garcia,* 528 F.2d 580, is probably the leading case for the proposition that, even if unrequested, failure to give instructions that caution the jury about paid government informant testimony is plain error if that testimony is uncorroborated and serves as the basic proof of the defendant's guilt. The Fifth Circuit Court of Appeals said in *Garcia:*

"Since no request or objection to the charge was made, we face the difficult task of deciding whether the failure to instruct rises to the level of plain error. [Citation omitted.] This Court has recognized that in reviewing a trial for plain error, the touchstone is fundamental fairness. [Citations omitted.] In *Collins,* we rejected the defendants' contention that the failure to instruct the jury on the credibility of an addict-informer amounted to plain error. Our decision rested on the ground that the informer's testimony was extensively corroborated and that proof of defendants' guilt was strong and convincing. [Citation omitted.]

"When the case is close and the witness particularly unreliable, however, this Court has declared that the failure to give a cautionary instruction amounts to plain error. . . . Fully acknowledging that the jury has the right and duty to assess the credibility of witnesses, we recognized [in *Williamson*] that in an exceptional case a jury verdict must be set aside if the reviewing court is convinced that a fair trial required that the jury be properly instructed on the evaluation and use of accomplice testimony. [Citations omitted.]

"Like *Williamson,* the case at bar is exceptional. Without the guidance of a carefully phrased instruction by the trial court, the jury was ill-equipped to reach a considered and fair verdict as to the guilt of Mario Sandoval. In the unique circumstances of this case, we hold that the failure to caution the jury to scrutinize carefully [the informant's] uncorroborated testimony implicating Mario was plain error and necessitates that his conviction be reversed." *Garcia,* 528 F.2d at 588.

The State has attempted to distinguish *Garcia* by stating the *Garcia* court found absolutely no corroborating evidence for the testimony of the informant and there were significant inconsistencies in the testimony of the informant and other witnesses called by the prosecution. According to the State, these facts, combined with the fact that the informant in *Garcia* had been paid an extraordinarily high amount for his activity, distinguish *Garcia* from the case at hand. The State characterizes the *Garcia* court as saying these factors are seldom present, citing "the unique. circumstances" of *Garcia.*

The State is correct in stating that there was no corroborating evidence in the case against Mario Sandoval, a codefendant in *Garcia*. *Garcia* is unique factually because there were three codefendants and while there was corroborating evidence against the other two codefendants, the D.E.A. agents were never with the informant when he allegedly met with Mario Sandoval. Additionally, Sandoval did not have a criminal record. The informant's testimony was also contradicted by Sandoval's own testimony and that of two witnesses who said they were present on the day that the informant claimed to have spoken with Sandoval. The court said, in the unique circumstances of *Garcia*, the failure to caution the jury was plain error and necessitated a reversal.

Like Sandoval in *Garcia*, Novotny is not someone known in the drug trade. Also like Sandoval, Novotny did present some corroborating testimony. George Lyne, Novotny's roommate, testified and Anna Marie Bolieu, a friend of Novotny, also testified. Lyne testified that Robert Currie was a neighbor and spent a great deal of time at the house where Lyne and Novotny resided. Lyne testified that Currie brought over some sort of powder which he said was a drug and attempted to sell it to Novotny or Lyne. Bolieu testified she was a friend of Novotny and had been at Novotny's house when Currie was there. She said Currie had at some time brought "crank" to Novotny's house. On the other hand, Currie's testimony is substantially uncorroborated on the important elements tending to show Novotny's guilt.

The instant case is quite similar to *Garcia* in the essentials; as in *Garcia*, the facts necessary to convict are highly dependent on the testimony of the informant.

We find that whether or not a cautionary instruction on the reliability of the testimony of paid informants is requested, it should be given when the testimony is substantially uncorroborated, substantial evidence contradicts the informant's testimony, or there is other evidence which casts a serious doubt on the informant's credibility.

Since such an instruction was not given here, we reverse and remand for a new trial.