No. 66,546

STATE OF KANSAS, *Appellee*, v. ALAN NOVOTNY, *Appellant*.

(851 P.2d 365)

Opinion filed April 16, 1993.

*Thomas Jacquinot*, special appellate defender, of Prairie Village, argued the cause, and *Jessica R. Kunen*, chief appellate defender, of Topeka, and *Vernon Keller*, legal intern, of Kansas Defender Project, University of Kansas School of Law, of Lawrence, were on the brief for appellant.

*Thomas R. Stanton*, assistant county attorney, argued the cause, and *Julie McKenna*, county attorney, and *Robert T. Stephan*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Alan Novotny was convicted by jury trial of the sale of methamphetamine (K.S.A. 65-4127b[b][3]); possession of marijuana (K.S.A. 65-4127b[a][3]); and possession of drug paraphernalia (K.S.A. 65-4152[a][2]). He appeals only the methamphetamine conviction. Said conviction was reversed by the Court of Appeals (*State v. Novotny*, 17 Kan. App. 2d 363, 837 P.2d 1327 [1992]). The matter is before us on petition for review.

The pertinent facts may be summarized as follows. Robert Currie became an undercover agent for the Salina Police Department in September 1989. Under the arrangement, Currie was to set up drug buys. He was to receive $50 for the purchase of less than one quarter pound of marijuana and $100 when more potent drugs or greater amounts of marijuana were involved. He had earned approximately $3,000 in this manner at the time of trial.

Defendant Alan Novotny lived across the street from Currie. The two were friends. Currie advised his police contact that Novotny had offered to sell him methamphetamine on October 8, 1989. Currie was wired for sound, searched, and supplied with $150. He was under police surveillance as he proceeded to defendant's residence. Upon Currie's entry into defendant's residence, the following conversation was recorded:

Currie: "Hey, dude. Presently in shower. Got the shit? 20, 40, 60, 80, 100, 10, 20, [30], 40, 60, 80, 100, 10, 20, 30, 40, 50. I'm out of here. Holler at you later on man. Thanks Alan."
Novotny: "Yep."

Currie was then searched again. Absent was the $150, but Currie had on his person a small plastic ziplock bag with a substance inside that tested positive for methamphetamine.

The same process was repeated the following day, with Currie being given $220 to purchase the drug. The recorded conversation at that time between Currie and defendant was as follows:

Novotny: "Who is it?"
Currie: "The law."
Novotny: ". . . don't give me no fucking shit man . . . comes over."
Currie: "I'm kind of in a hurry man. Like I'm on the move. 20, 40, 60, 80, 90, 1, 10, 20, 30, 40, 50, 60, 70, 80, 90, 2, 20. Talk to you later. I'll probably yell at you in a while."
Novotny: "I'm going to go get some smoke now."
Currie: "Alright. Well I'll check back with you."
Novotny: "Okay."
Currie: "Talk to you later."

The substance in the plastic bag removed from Currie's person following this transaction was tested and found not to contain any controlled substance. Note: The numbers contained in each of the conversations relate to the counting out of currency ($150 on October 8 and $220 on October 9).

Currie testified he had made prior arrangements with defendant to purchase specified amounts of methamphetamine for $150 and $220 respectively, that he paid said sums to defendant and received from defendant the later seized substances in exchange therefor. Defendant did not dispute Currie's presence on either occasion nor the substance of the recorded conversations. Rather, he offered a different explanation as to what the conversations referred to and what occurred. He testified Currie had sold him an automobile but had never delivered the same to him or returned his money. (Currie testified this was true, but that the deal was that defendant was to pick up the vehicle in Republic County, which he had failed to do). Defendant further testified that Currie offered to give him drugs in lieu of return of the vehicle purchase money. When defendant turned down the offer, Currie then asked for and received permission to leave the drugs at defendant's house while Currie attempted to sell them elsewhere. Thus, under defendant's version, the recorded conversations involved Currie giving defendant refunds on monies defendant had previously paid for the automobile purchase, and that the substances removed were Currie's property which he had previously left with defendant.

The sole issue on appeal is whether the district court erred in failing to give a cautionary instruction regarding the testimony of Currie. No such instruction was requested nor was any objection made to the court's proposed instructions. If there is no contemporaneous objection to a jury instruction, an appellate court may reverse only if the instruction given was clearly erroneous. An instruction is clearly erroneous when a reviewing court reaches a firm conviction that, if the trial error had not occurred, there is a real possibility that the jury would have returned a different verdict. *State v. Ji*, 251 Kan. 3, 24-25, 832 P.2d 1176 (1992).

Although stating the correct standard of appellate review, the Court of Appeals made no determination on that aspect thereof which provides the failure to give the instruction is " 'clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility the jury would have returned a different verdict.' " 17 Kan. App. 2d at 367. Rather, the Court of Appeals concluded:

"We find that whether or not a cautionary instruction on the reliability of the testimony of paid informants is requested, it should be given when the testimony is substantially uncorroborated, substantial evidence contradicts the informant's testimony, or there is other evidence which casts a serious doubt on the informant's credibility.

"Since such an instruction was not given here, we reverse and remand for a new trial." 17 Kan. App. 2d at 372.

In reaching the result it did, the Court of Appeals relied heavily on *State v. Fuller*, 15 Kan. App. 2d 34, 802 P.2d 599 (1990), *rev. denied* 248 Kan. 997 (1991), and cases cited therein. We believe that reliance was misplaced. In *Fuller*, a confidential informant made the buy. His identity was not disclosed at trial, although he testified. He had been wired by the police, but the wire did not work. Thus, his testimony regarding the actual transaction was wholly uncorroborated. Further, in *Fuller*, the defendant had requested a cautionary instruction. The only common factor in both *Fuller* and the case before us is that both "informants" had agreed to work for the police after prior brushes with the law. In *Fuller*, the informant had drug charges dropped in exchange for cooperation, where Currie had just been questioned relative to a break-in. Each was paid for his services. Neither the informant in *Fuller* nor Currie in the case before us comes across as a pillar of the community, but such status would be quite rare in paid undercover agents or informants in drug investigations.

As noted in the *Fuller* opinion, the applicable standard of review was quite different:

"The standard of review for criminal appeals involving jury instructions depends on whether the defendant objected to the instructions at trial. See *State v. DeMoss*, 244 Kan. 387, 391-92, 770 P.2d 441 (1989). 'When a trial court refuses to give a specific instruction, the appellate court must view the evidence in the light most favorable to the requesting party.' *State v. Hickey*, 12 Kan. App. 2d 781, 784, 757 P.2d 735, *rev. denied* 243 Kan. 781 (1988)." 15 Kan. App. 2d at 39.

The fact that evidence of the buy itself rested upon the informant's uncorroborated testimony, and the fact the cautionary instruction had been requested, are the bases for the court concluding:

"Where the defendant requests a cautionary instruction on the testimony of a paid informant, the informant's testimony is wholly uncorroborated, and

the informant's testimony provides the sole basis for defendant's conviction, it is error for the trial court to refuse such an instruction." 15 Kan. App. 2d 34, Syl. ¶ 4.

As a matter of coincidence, we note that Detective Michael Marshall was the contact officer running the informants in both *Fuller* and the case before us. Likewise, Judge Daniel Hebert presided in both cases.

The opinions in *Fuller* and in the case before us cite *United States v. Garcia*, 528 F.2d 580 (5th Cir.), *cert. denied* 429 U.S. 898 (1976). In *Garcia*, a paid informant (Marquez) arranged for a drug buy. Two federal agents were the actual purchasers and corroborated the informant's testimony as to the involvement of two of the defendants (Joe Garcia and Guillermo Sandoval). Implication of a third defendant (Mario Sandoval) rested wholly on the informant's testimony. No cautionary instruction was requested. The convictions against the two defendants whose involvement was corroborated by other evidence were upheld. The conviction of the defendant against whom the informant's testimony was uncorroborated was reversed. The court's rationale for the reversal was as follows:

"The appeal of Mario Sandoval is, however, quite distinct from that of his co-defendants; as we have noted, in his case there is absolutely no corroborating evidence for the testimony of Marquez. It is also noted that the record was silent as to any previous activity in the area of possession, use or sale of drugs by Mario, who took the stand and testified on his own behalf; additionally, both Guillermo Sandoval, who was not related to Mario, and Joe Garcia took the stand, and both testified in a manner that was completely exculpatory of Mario. And more significantly, neither of the DEA agents who, by Marquez's testimony, were at one meeting with him and Guillermo where Mario's name was mentioned supported Marquez's story.

"The sole charge to this jury relating to the credibility of witnesses was general in nature, cautioning the jurors to 'give the testimony of each witness careful scrutiny . . . ' and to take into consideration 'any circumstances which tend to shed light upon the credibility of the witness.' Mario Sandoval did not request any additional or different instructions as to Marquez although Marquez's uncorroborated testimony was the single source of evidence against him.

"In this Circuit, a defendant is entitled to a special cautionary instruction on the credibility of an accomplice or a government informer if he requests it and the testimony implicating the accused is elicited solely from the informer or accomplice. *United States v. Gonzalez*, 491 F.2d 1202 (5th Cir. 1974). *See generally, United States v. Lee*, 506 F.2d 111 (D.C. Cir. 1974),

*cert. denied,* 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975). The rationale behind this requirement is to insure that no verdict based solely on the uncorroborated testimony of a witness who may have good reason to lie is too lightly reached.

"In this case, there was more than the usual need for a cautionary instruction. First and most important, the portion of Marquez's testimony which solely supplied the incrimination of Mario was totally uncorroborated by any other witness and was contradicted by Mario's own testimony and by the only two witnesses present on the day Marquez claims to have spoken with Mario. Second, Marquez was paid an extraordinarily high amount to act as an informer and the laissez-faire employment arrangement opened numerous potentials for abuse. Finally, the possibility that Marquez could be guilty of income tax evasion, which was permitted if not encouraged by the lack of withholding by the government, combined with the other circumstances to cast a dark shadow on the credibility of this witness.

"If Mario Sandoval had requested an informer-credibility instruction, we would not hesitate to hold the failure to so charge the jury reversible error. Since no request or objection to the charge was made, we face the difficult task of deciding whether the failure to instruct rises to the level of plain error. Fed.R.Crim.P. 52(b). This Court has recognized that in reviewing a trial for plain error, the touchstone is fundamental fairness. *United States v. Collins,* 472 F.2d 1017 (5th Cir. 1972), *cert. denied sub nom. Branch v. United States,* 411 U.S. 983, 93 S.Ct. 2278, 36 L.Ed.2d 960 (1973). In *Collins,* we rejected the defendants' contention that the failure to instruct the jury on the credibility of an addict-informer amounted to plain error. Our decision rested on the ground that the informer's testimony was extensively corroborated and that proof of defendants' guilt was strong and convincing. *Id.* at 1019.

"When the case is close and the witness particularly unreliable, however, this Court has declared that the failure to give a cautionary instruction amounts to plain error. In *Williamson v. United States,* 332 F.2d 123 (5th Cir. 1964), we reversed an embezzlement conviction based solely on the uncorroborated testimony of an accomplice whose story contained several internal inconsistencies. Fully acknowledging that the jury has the right and duty to assess the credibility of witnesses, we recognized that in an exceptional case a jury verdict must be set aside if the reviewing court is convinced that a fair trial required that the jury be properly instructed on the evaluation and use of accomplice testimony. *Id.* at 126. *See also McMillen v. United States,* 386 F.2d 29 (1st Cir. 1967), *cert. denied,* 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288 (1968).

"Like *Williamson,* the case at bar is exceptional. Without the guidance of a carefully phrased instruction by the trial court, the jury was ill-equipped to reach a considered and fair verdict as to the guilt of Mario Sandoval. *In the unique circumstances of this case,* we hold that the failure to caution the jury to scrutinize carefully Marquez's uncorroborated testimony impli-

cating Mario was plain error and necessitates that his conviction be reversed." 528 F.2d at 587-88. (Emphasis supplied.)

The "unique circumstances" found in *Garcia* are absent herein. The informant's testimony was not uncorroborated. No "extraordinarily high amount" was paid to him for his services (in *Garcia* over $30,000 in a short period of time). Likewise, the income tax evasion factor was not present.

The Court of Appeals herein held Currie's testimony was substantially uncorroborated. We do not agree. Currie was given money with which to buy drugs from Novotny. The police searched him to make sure he had no drugs on him. They watched him as he went to the defendant's residence. The police had a wire on Currie and recorded what was said while Currie and Novotny were together. Currie went into the house on October 8 with money sans drugs. He came out sans money but with a packet of methamphetamine. A repeat occurs the following day, but the packet contains a noncontrolled substance. The transcripts were admitted as evidence.

In his defense herein, defendant does not dispute Currie's presence or what was said either day. He does not dispute receiving $150 on the 8th or $220 the following day, or Currie leaving his residence with the packets taken from Currie by police. Rather, he is contending a different interpretation should be given to the corroborated events—the money was repayment of an honest debt, and Currie was retrieving his own contraband property.

The jury was given the general witness credibility instruction (PIK Crim. 2d 52.09 [1992 Supp.]), as follows:

"It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified."

The defense introduced some evidence tending to corroborate defendant's interpretation of the events—defendant's roommate and a friend each testified at some time Currie had brought what was believed to be drugs into defendant's residence. The jury was free to determine the credibility of the various witnesses herein. Defense counsel was free to argue and did argue that only payment for a car was involved and that the packets Currie

took back were his own property. Currie's status as a paid police informant was before the jury. Utilizing the general witness credibility instruction, it was up to the jury to determine the weight and credit to be given to the testimony of each witness.

We conclude that ordinarily it is error to refuse to give a cautionary instruction on the testimony of a paid informant or agent where such testimony is substantially uncorroborated and is the main basis for defendant's conviction. Where, however, no such instruction is requested nor objection made to the court's instructions, and such testimony is substantially corroborated, the absence of a cautionary instruction is not error and is not grounds for reversal of the conviction.

The judgment of the Court of Appeals is reversed. The judgment of the district court is affirmed.

DAVIS, J., not participating.

TERRY L. BULLOCK, district judge, assigned.