No. 72,762

STATE OF KANSAS, *Appellee*, v. DONNIE W. L. LOLAR,
a/k/a DONI W. L. HAMILTON, *Appellant*.

(914 P.2d 950)

Opinion filed
April 19, 1996.

· *Steven R. Zinn*, deputy appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*James T. Pringle, Jr.*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant was convicted of first-degree premeditated murder (K.S.A. 21-3401), two counts of felony theft (K.S.A. 1993 Supp. 21-3701), and unlawful possession of a firearm (K.S.A. 1993 Supp. 21-4204[a][3]). He appeals, claiming: (1) an improper readback of testimony; (2) failure to give a limiting instruction; and (3) the unconstitutional use of a juvenile adjudication to calculate criminal history for sentencing.

Donnie W. L. Lolar, a/k/a Doni W. L. Hamilton, was charged with first-degree murder, two counts of felony theft, and unlawful possession of a firearm stemming from the killing of Kurt Finuf on October 26, 1993. Because the issues on appeal relate to nonfactual issues, the facts are highly summarized.

Hamilton traveled from Topeka to Wichita by bus on October 18, 1993. In the early morning hours of October 20, his uncle, David Towles, refused to drive him to Winfield to see another uncle, Brian Towles. Hamilton told David he would steal a car to get to Winfield. Subsequently, Hamilton stole a car and drove to Winfield.

Hamilton and Brian attended a party at Kurt Finuf's house in Winfield on October 23, 1993. Finuf had two guns, a .9 mm and a .22 caliber, in a cabinet. An individual observed Finuf give Hamilton the .9 mm gun from the cabinet. Hamilton stuck the gun in the front of his pants. Another witness testified that 2 days after the party, Finuf had both guns.

On the evening of October 25, Hamilton sought a ride from Arkansas City to Wichita. When he was unable to reach Brian, Hamilton called Finuf. Around 11:15 p.m., Finuf and Hamilton purchased some beer at a grocery store. At 11:56 p.m., Hamilton phoned his girlfriend in Topeka from Finuf's home in Winfield.

Hamilton arrived in Wichita at David Towles' house around 3 a.m., driving Finuf's car. Hamilton told David that he had gotten

into a fight with someone in Winfield and had taken two suitcases full of items and a car from that person. The items were identified at trial as belonging to Finuf. When Hamilton informed David he wanted to get rid of the car, David suggested that Hamilton burn the car. After burning the car near Augusta, they returned to David's house. Hamilton admitted to David that he had shot the person twice, once with a .9 mm gun and once with a .22 caliber gun.

Finuf was found dead in his home. Finuf had suffered two gunshot wounds to his head, one from a .9 mm gun and one from a .22 caliber gun.

Hamilton testified at his trial that David Towles killed Finuf during a drug transaction Hamilton had arranged between Finuf and David. Hamilton testified that while David and Finuf discussed purchasing cocaine, he drove to a convenience store in Finuf's car. When he returned to Finuf's house, Finuf's body was in the front room. Hamilton testified that he drove David's car back to Wichita and David drove Finuf's car. David later set Finuf's car on fire.

The jury convicted Hamilton of first-degree premeditated murder, two counts of felony theft, and unlawful possession of a firearm. Hamilton received sentences totalling life plus 32 years. He appeals.

## Readback of a Witness' Testimony

Hamilton's first claim is that the trial court erred in denying his motion for a new trial based on the court's improper readback to the jury of David Towles' trial testimony. When asked what happened when he saw Hamilton on October 20, David testified:

"I went in—I spoke to all the people that was in the house. [Hamilton] told me he wanted to talk to me . . . . And he was crying, grabbed me, hugged me, cried for a few minutes and told me that he was tired of people messing with him. Said he had got into some trouble in Topeka and almost shot this guy."

Hamilton's counsel objected to the testimony's relevance, argued the response was prejudicial, and requested that the response be stricken. The trial judge sustained the defendant's objection and instructed the jury that it was to disregard the witness' answer.

After the jury began deliberations, it requested a readback of the testimony of four witnesses, including David Towles. During

the readback of David's testimony, the court reporter read the testimony that was objected to and noted the defendant's objection. The court reporter did not read the court's admonition that the jury was to disregard the answer. During a later break in the readback of testimony, Hamilton's counsel informed the court that its admonition had been omitted from the readback. The judge offered to again admonish the jury. Hamilton's counsel declined.

In a motion for a new trial, Hamilton claimed that the trial judge's failure to exclude that evidence or repeat the admonition during the readback of David Towles' testimony was so prejudicial that it required he be granted a new trial. In response, the trial judge noted that Hamilton's attorney had declined the judge's offer to again admonish the jury to disregard the evidence excluded during trial; the judge concluded that because the defendant rejected the court's offer to again admonish the jury, he could not assert it was error and denied the motion for a new trial.

On appeal, Hamilton claims he did not waive the issue by declining the subsequent admonition to the jury because the judge's admonition would have highlighted the inadmissible testimony. Further, Hamilton argues that the testimony was highly prejudicial because that testimony implied he had a propensity for violence and to use a gun and portrayed him as capable of murder.

The readback of testimony at a jury's request is required by K.S.A. 22-3420(3). See *State v. Boyd*, 257 Kan. 82, 87-88, 891 P.2d 358 (1995). However, the manner and extent of the trial court's response to a request for a readback lie within the sound discretion of the trial court. 257 Kan. at 87; see *State v. Hopkins*, 257 Kan. 723, Syl. ¶ 1, 896 P.2d 373 (1995).

The trial court may grant a new trial if required in the interest of justice. K.S.A. 22-3501(1). In *State v. Morris*, 255 Kan. 964, 880 P.2d 1244 (1994), the defendant claimed that the court erred in refusing to admit certain evidence. In reviewing whether the failure to admit the evidence was error, this court stated:

"Review of the admission or the exclusion of evidence is governed by K.S.A. 60-261, the harmless error rule, which provides that no error in either the admission or the exclusion of evidence by the court is a ground for granting a new trial or for setting aside a verdict unless refusal to take such action appears to the

court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties. *State v. Getz*, 250 Kan. 560, 569, 830 P.2d 5 (1992)." 255 Kan. at 983.

Did the failure of the court reporter to include the admonition in the readback of the testimony require a new trial? Here, the judge admonished the jury to disregard that evidence during David's initial testimony. Although the jury was not reminded of the admonition during the readback of David's testimony, the court reporter did note to the jury the defendant's objection. Therefore, the jury was aware of the initial admonition and could recall that admonition during the readback. In addition, the judge's written instructions to the jury in part stated:

"Members of the Jury: It is my duty to instruct you in the law that applies to this case, and it is your duty to follow all of the instructions. You must not single out one or more instructions and disregard others. You should construe each instruction in the light of and in harmony with the other instructions, and you should apply the instructions as a whole to the evidence. You should decide the case by applying the law to the facts as you find them. The order in which the instructions is given is no indication of their relative importance.

"You may consider as evidence whatever is admitted in the trial as part of the record, whether it be the testimony of witnesses, a stipulation of the parties or an article or document marked as an exhibit. You should consider only testimony and exhibits admitted into evidence.

. . . .

"You should evaluate the evidence admitted in this case and determine whether the defendant is guilty or not guilty in accordance with these instructions."

Jury instructions are to be considered together and read as a whole, without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, the instructions do not constitute reversible error although they may be in some small way erroneous. *State v. Johnson*, 255 Kan. 252, Syl. ¶ 4, 874 P.2d 623 (1994).

While the judge's admonition to disregard the testimony should have been given to the jury during the readback, under the facts and circumstances here the trial court did not abuse its discretion in refusing to grant a new trial.

## Limiting Instruction

Hamilton was charged with unlawful possession of a .22 caliber pistol based on his prior conviction of a felony. Prior to trial, Hamilton sought to exclude the .22 caliber pistol from being admitted into evidence at trial because that gun could not be identified definitely as one of the murder weapons. During the hearing on that motion, Hamilton's counsel also sought to exclude evidence of the defendant's prior felony conviction. Counsel suggested that the trial judge take judicial notice of Hamilton's prior conviction, and if Hamilton was convicted of possession of a weapon, the judge could then consider the defendant's prior felony conviction when imposing sentence. After overruling the defendant's request, the trial judge suggested that he could instruct the jury that it could consider the prior felony conviction only as to the charge of unlawful possession and not as to the charge of homicide.

K.S.A. 60-406 states that when evidence is admissible for one purpose but is inadmissible for another purpose, "the judge upon request shall restrict the evidence to its proper scope and instruct the jury accordingly." Here, evidence of the defendant's prior felony theft conviction was relevant and admissible as an element of the unlawful possession of a firearm charge but was otherwise inadmissible. If Hamilton had requested an instruction limiting the jury's consideration of the prior crime, the trial judge would have been required to give such an instruction.

At trial, evidence of defendant's prior convictions were admitted incidentally through the journal entry of conviction. The trial judge did not instruct the jury that it could consider the defendant's prior felony theft conviction only as proof of an element for the unlawful possession of a firearm charge. The defendant did not request an instruction or object to the court's failure to instruct the jury.

K.S.A. 22-3414(3) has been interpreted to state that no party may assign as error the giving of or the failure to give an instruction unless the party objects thereto before the jury retires, unless the failure to instruct is clearly erroneous. Giving an instruction or failing to give an instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not

occurred, there is a real possibility the jury would have returned a different verdict. See *State v. Novotny*, 252 Kan. 753, Syl. ¶ 1, 851 P.2d 365 (1993); *State v. Deavers*, 252 Kan. 149, Syl. ¶ 4, 843 P.2d 695 (1992), *cert. denied* 125 L. Ed. 2d 676 (1993). Hamilton's counsel was informed at a pretrial hearing that he could request a limiting instruction concerning the prior conviction, but he failed to make that request at trial. Our standard of review is whether the failure to give the instruction was clearly erroneous.

Here, the evidence of the defendant's prior convictions was minuscule. A journal entry admitted at trial shows that Hamilton was charged with aggravated robbery, a class B felony, and burglary, a class E felony, and that he pleaded guilty to theft, a class E felony, and battery, a class B misdemeanor. In testimony covering two-and-one-half pages of a transcript of evidence in excess of 1,000 pages, a court services officer stated that on February 8, 1993, Hamilton was convicted of theft, a class E felony, and battery, a class B misdemeanor. In what was one of numerous trial exhibits, the journal entry of the prior felony conviction was admitted into evidence. There is no real possibility that the jury would have reached a different verdict had it been instructed to limit its consideration of Hamilton's prior felony conviction. The failure to give a limiting instruction was not clearly erroneous.

### Use of Juvenile Adjudications

Hamilton had a juvenile adjudication for residential burglary which was considered in calculating his criminal history score under the Kansas Sentencing Guidelines Act (KSGA). He contends that using his juvenile adjudication for this purpose is unconstitutional as violative of due process and the prohibition against ex post facto laws.

Hamilton's challenge to the constitutionality of considering juvenile adjudications under the KSGA was recently decided adverse to his position in *State v. LaMunyon*, 259 Kan. 54, 911 P.2d 151 (1996). We find that *LaMunyon* controls.

Affirmed.