502 So.2d 987 (1987)
Samuel INGRAHAM, Appellant,
v.
The STATE of Florida, Appellee.
S.I., a Juvenile, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 84-1658, 84-1675.
District Court of Appeal of Florida, Third District.
February 17, 1987.
Rehearing Denied March 17, 1987.
Bennett H. Brummer, Public Defender, and Gitlitz, Keegan & Dittmar and James D. Keegan, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Mark J. Berkowitz, Asst. Atty. Gen., for appellee.
Before BASKIN and DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
These appeals are from (1) a judgment of conviction and sentence upon a jury verdict finding the defendant guilty of two felonies and (2) an order denying the defendant's motion to vacate certain past juvenile adjudications entered upon allegedly involuntary guilty pleas. These two matters were consolidated because the juvenile adjudications were calculated into the sentencing guideline scoresheet, thus enhancing the sentence imposed upon the felony convictions.
We turn first to the defendant's challenge to his conviction. We find merit in his contention that the trial court committed reversible error when it interrogated the members of the jury in his absence and without his having knowingly and voluntarily waived his right to be present.
The record reflects that before the second day of trial began the bailiff brought to the trial court's attention that a few minutes earlier the jurors had been seated in the lobby waiting to enter the jury room *988 when the defendant, in handcuffs, was escorted past them by a uniformed corrections officer. The trial court unilaterally decided to question each juror individually about what he or she might have seen and proceeded to do so in chambers; the prosecutor and the defense attorney were present, but the defendant was not. Four of the seven jurors[1] denied seeing the defendant; three admitted seeing the defendant and the officer together but replied negatively to the court's questions, "Did you notice anything in particular about the defendant in terms of his hands?" and "Did you notice ... any confining articles on or about him?" and "... you didn't notice anything on his hands or anything like that?"
Florida Rule of Criminal Procedure 3.180(a)(5) declares that "[i]n all prosecutions for crime the defendant shall be present ... [a]t all proceedings before the court when the jury is present." Although the language of the rule is mandatory, a violation of the rule is not per se reversible error; therefore, we must address the question of whether the defendant's involuntary absence from the interrogation of the jurors was harmful to him. Garcia v. State, 492 So.2d 360 (Fla.), cert. denied, ___ U.S. ___, 107 S.Ct. 680, 93 L.Ed.2d 730 (1986).
The defendant suggests that the proceedings that occurred in his absence manifestly required his presence. He says that since he himself was witness to the incident being inquired about, it is obvious that, if the jurors were to be questioned, his firsthand knowledge of whether certain jurors looked directly at him or his handcuffs, the visibility of the cuffs at the time in question, and the like, was information indispensable to his attorney during the questioning. Moreover, he suggests that his input into the decision of whether to question the jurors at all  and thereby risk bringing to their attention through the questioning alone that the defendant was hand-cuffed  was equally important. The proper procedure  and the one which, according to the defendant, he would have urged had he been present  was to first question the corrections officer about what occurred and thereafter to allow the defendant to decide whether any interrogation of the jurors should be conducted.
We agree with the defendant that the present case is one, much like Francis v. State, 413 So.2d 1175 (Fla. 1982), where it is not possible to assess the extent of the prejudice to the defendant, if any, which resulted from his absence from the proceedings. While the State argues that even if the defendant had proved that the jurors had briefly and fortuitously seen him in handcuffs, it would still devolve upon him to show that he was prejudiced thereby, see United States v. Bankston, 424 F.2d 714 (5th Cir.1970); Hardin v. United States, 324 F.2d 553 (5th Cir.1963), the argument overlooks that the defendant was excluded from the very hearing at which this showing might have been made. Additionally, it is no answer to the defendant's complaint on appeal to suggest, as the State does, that it would be impossible for the defendant to show prejudice because all of the jurors denied seeing handcuffs on the defendant's hands. It is, after all, those very denials that might have been disturbed or overcome by the defendant's presence at the proceeding, possibly resulting in a more enlightened examination of the jurors.[2]
We turn now to the defendant's contention that certain past juvenile adjudications must be set aside as being the product of involuntary guilty pleas. Ordinarily, our reversal of the defendant's conviction would obviate the need to address the validity of the juvenile adjudications since they are of consequence here only because calculated into the defendant's sentencing *989 guideline score. However, because the question of the validity of these juvenile adjudications will recur in the event the defendant is convicted upon retrial in this case, we address the point.
The facts are undisputed. In January 1982, a petition for delinquency was filed against the defendant, then a juvenile. In February 1982, after being advised by his attorney, an assistant public defender, that an adjudication of guilt would not be held against him in any way once he became an adult, the defendant accepted the State's offer, pleaded guilty to the underlying charges of attempted burglary and disorderly conduct, and was adjudicated delinquent.
In July 1982, another petition for delinquency was filed against Ingraham, still a juvenile. Acting on the same advice that there would be no consequences to this plea in his adult life, Ingraham pleaded guilty to possession of burglary tools, one of the two charges against him, and was again adjudicated delinquent.
In April 1984, Ingraham, now an adult, was convicted of the felonies which are the subject of the appeal in Case No. 84-1658. By this time a change in the law made Ingraham appropriately concerned that the juvenile delinquency adjudications would be included in his sentencing guideline scoresheet, and, accordingly, he moved in the juvenile court to set aside his 1982 pleas as involuntary. His contention was that the sentencing guidelines, Florida Rules of Criminal Procedure 3.701 and 3.988, which went into effect on October 1, 1983, and provided for the enhancement of the recommended guideline sentence on account of previous juvenile delinquency adjudications, would, if enforced against him, render his pleas, entered with assurances to the contrary, involuntary. Alternatively, he objected to the juvenile adjudications being used to increase his sentence. On this appeal, Ingraham concedes that if his sentence is not enhanced through the use of his prior juvenile adjudications, then the assurances given to him in 1982 when he entered guilty pleas would be fulfilled and the voluntariness of his pleas unaffected.
Florida Rule of Criminal Procedure 3.988 mandates that a convicted defendant's prior juvenile record of convictions be calculated into his adult sentence or scoresheet computation. Florida Rule of Criminal Procedure 3.701 defines the term "prior record" in relevant part as follows:
"(d)(2) General Rules and Definitions "`Conviction' means a determination of guilt resulting from plea. .. .
"(d)(5)(c) Juvenile record: All prior juvenile dispositions which are the equivalent of convictions as defined in section (d)(2), occurring within three (3) years of the commission of the primary offense and which would have been criminal if committed by an adult, shall be included in the prior record."
The combined effect of these rules is to enhance a defendant's adult sentence based on his juvenile convictions, even where the conviction resulted from a plea.[3]
It is apodictic that to be valid, a guilty plea must be knowing, intelligent, and voluntary. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A guilty plea induced by a promise of defense counsel that is not kept is involuntary, Costello v. State, 260 So.2d 198 (Fla. 1972); Lonergan v. State, 495 So.2d 196 (Fla. 2d DCA 1986); Houghton v. State, 454 So.2d 725 (Fla. 1st DCA 1984); Ream v. State, 449 So.2d 960 (Fla. 4th DCA 1984), provided only that the defendant had a reasonable basis for relying upon his attorney's advice. Costello v. State, 260 So.2d 198. Plainly, Ingraham had a reasonable basis for relying on advice which at the time given correctly stated the law. Since it is also undisputed that Ingraham relied on his *990 attorney's advice, his plea is involuntary unless the assurance made to him is ultimately kept.
If, as the State presently insists, State v. Jackson, 478 So.2d 1054 (Fla. 1985), absolutely requires that the trial court sentence a defendant in accordance with the guidelines in effect at the time of the sentence, then it appears that an unintended fallout of Jackson's holding that an alteration in the guidelines is merely a procedural change is that persons, like Ingraham, who have justifiably relied on pre-guideline advice in entering pleas of guilty to juvenile charges, necessarily have the right to have those pleas and consequent adjudications vacated when the subsequent adoption of guidelines contradicts the earlier advice, makes the attorney's assurances unfulfillable, and thus renders the pleas involuntary. If, however, the trial court determines that under these unique circumstances Jackson does not preclude it from omitting Ingraham's juvenile adjudications in calculating the guideline sentence, then defense counsel's assurances to Ingraham that his juvenile adjudications would not be used against him will have been fulfilled, and there will be no need to vacate Ingraham's juvenile adjudications and pleas. Quite obviously, the State cannot have it both ways.
Reversed and remanded for a new trial.
NOTES
[1] The six-person jury and one alternate.
[2] The State's further argument that the defendant waived this point by failing to ask for a curative instruction to the effect that handcuffs are not an indication of guilt is ludicrous considering the jurors' denial of seeing anything on the defendant's hands and the court's studious avoidance of the "H-word."
[3] In the present case, 23 points were added to Ingraham's sentencing scoresheet, changing the recommended sentence from "any nonstate prison sanction" to the higher category range of "twelve to thirty months incarceration." Ingraham was actually sentenced to 24 months incarceration.