STATE of Minnesota, Respondent,

v.

Ronald V. LITTLE, Appellant.

No. C2-87-2405.

Court of Appeals of Minnesota.

May 24, 1988.
Review Denied July 6, 1988.

Hubert H. Humphrey, III, Atty. Gen., Rebecca H. Hamblin, Sp. Asst. Atty. Gen., St. Paul, for respondent.

C. Paul Jones, State Public Defender, Marie L. Wolf, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by SCHUMACHER, P.J., and FOLEY and FORSBERG, JJ., without oral argument.

## OPINION

FOLEY, Judge.

Ronald V. Little pleaded guilty to one count of arson in the first degree. Little was certified as an adult and sentenced to a presumptive sentence of 34 months (severity level VII offense; criminal history score 1). The trial court computed the criminal history score by assigning Little one point for his juvenile record. We affirm.

## FACTS

Appellant Ronald Van Little was an inmate at the Anoka County Juvenile Center

Correction Facility. In late February 1987 he was confined to his room at the facility for attempting to run away. On February 25, 1987 Little was allowed out of his room to watch an hour of television. The staff warned Little not to crack any jokes when he was out of his room. However, while watching "Gimme a Break" Little did make a comment and began laughing.

Little was told to return to his room but refused protesting that this was unfair. On returning to his room, he became verbally abusive and began to fight with the staff. The staff determined that Little was out of control and restrained him by handcuffing his hands behind his back. They also removed Little to a strip room, a room used for isolation, and left him there.

The only furnishing in the room was a mattress. Little slid his arms to the front of him to make himself more comfortable and sat down. He had not been searched prior to being placed in the strip room and he had a cigarette and matches in his pocket. He smoked the cigarette. Then he started lighting the remaining matches and throwing them over his shoulder. Finally, Little smelled smoke and saw that a fire was smoldering in the mattress. He called for help. Initially, the staff did not respond to Little's pleas. When they did a short time later, a full scale fire was raging.

The fire caused approximately $40,000 to $50,000 worth of damage to the facility. Three inmates were trapped by the fire and had to be rescued. One of these inmates suffered second degree burns.

Little was 17 years old at the time of the fire. Following a reference hearing petition, he was certified as an adult. Little pleaded guilty to arson in the first degree in violation of Minn.Stat. § 609.561, subd. 1 (1986). Following his plea a presentence investigation was conducted. On September 16, 1987 Little was sentenced to a presumptive sentence of 34 months (severity level VII, criminal history score 1). Little's criminal history score was derived from two incidents for which he was adjudicated in juvenile court subsequent to his 16th birthday, one for receiving stolen property and one for burglary in the second degree.

## ISSUES

1. Is the use of juvenile adjudications to enhance the sentence of an adult criminal defendant unfair and contrary to the purposes of the Minnesota Juvenile Court Act?

2. Is the use of juvenile adjudications to enhance a criminal defendant's sentence a violation of the defendant's constitutional rights of due process and equal protection?

## ANALYSIS

1. The Minnesota Sentencing Guidelines provides for a criminal history index to be used in determining the sentence. In computing the criminal history index, the prior juvenile record for young adult felons may be used. Minnesota Sentencing Guidelines II.B.

Little contends this provision is contrary to the purposes of Minn.Stat. ch. 260 (1986), the Minnesota Juvenile Court Act. In addition, Little asserts other jurisdictions have almost unanimously held that a juvenile offense may not be used as a criminal conviction for enhancement purposes in habitual offender proceedings.

The use of juvenile adjudications in computing a criminal history score is not inconsistent with the purpose of the Minnesota Juvenile Court Act. The Act itself explicitly provides that juvenile adjudications may later be used to determine a proper sentence. Minn.Stat. § 260.211, subd. 1 (1986). In addition, Minn.Stat. § 260.161, subd. 1 (1986) provides in part:

> The court shall keep and maintain records pertaining to delinquent adjudications until the person reaches the age of 23 years and shall release the records on an individual to a requesting adult court for purposes of sentencing.

Therefore, Little's argument that the Minnesota Sentencing Guidelines and the Minnesota Juvenile Court Act are inconsistent is without merit.

There is also no merit to Little's argument that other jurisdictions have almost unanimously held that a juvenile offense

may not be used as a criminal conviction for enhancement purposes in habitual offender proceedings. Little provides no authority that this is the holding in the majority of jurisdictions. *But see,* Feld, *Juvenile Court Legislative Reform and the Serious Young Offender: Dismantling the "Rehabilitative Ideal",* 65 Minn.L.Rev. 167, 233 (1981) (use of prior juvenile convictions in adult sentencing decisions is a policy followed in many jurisdictions). In addition, in each of the cases relied on by Little there were no limits to how the prior juvenile adjudications could be used. To impose some restrictions on the use of the juvenile adjudications, the courts in these other jurisdictions deemed the prior juvenile adjudications not to be convictions for purposes of enhancement under the respective state's habitual felon statutes. *See People v. West,* 154 Cal.App.3d 100, 107, 201 Cal.Rptr. 63, 67 (1984) (juvenile adjudications which could be used without limitation declared not convictions for purposes of enhancement under habitual felon statute); *Pickens v. State,* 475 So.2d 637, 639 (Ala.Crim.App.1985) (prior juvenile record which included two counts of grand larceny could not be used to impose life sentence on defendant convicted of first degree assault).

The Minnesota Sentencing Guidelines restricts the use and impact of the prior juvenile adjudications. Minnesota Sentencing Guidelines II.B.4. The commentary to the guidelines provides additional restrictions on the use of juvenile adjudications for criminal history score purposes. It provides in part:

[O]nly juvenile offenses that would have been felonies if committed by an adult will be considered in computing the criminal history score. * * *.

* * * the juvenile offenses must have been committed after the offenders sixteenth birthday. * * *.

* * * juvenile offenses will be considered in computing the criminal history score only for adult offenders who have not attained the age of 21 at the time the felony was committed for which they are now being sentenced. * * *.

* * * it would take two juvenile offenses to equal one point on the criminal

history score and no offender may receive more than one point on the basis of prior juvenile offenses.

Minnesota Sentencing Guidelines II.B.402–405 comments.

Compliance with these factors severely restricts the use of juvenile adjudications in the calculation of criminal history scores in Minnesota. *State v. Thomas,* 374 N.W.2d 586, 588 (Minn.Ct.App.1985). It is only when it is apparent that the rehabilitative posture of the juvenile courts has failed that a young adult felon can fairly be given a longer sentence than his counterpart with no prior juvenile adjudications. *See* Minnesota Sentencing Guidelines II.B.401 comment.

The legislature has drawn a line between the mistakes of youth that are not repeated and those which continue into young adulthood. *See id.* The system punishes only those offenders who have abused the juvenile court's leniency and then does so only within the confines and safeguards supplied by the Minnesota Sentencing Guidelines.

2. Little argues his constitutional rights of due process and equal protection were violated by the use of his juvenile adjudications at the time of his sentencing for arson. Little contends under the Minnesota Sentencing Guidelines, the juvenile receives the worst of both worlds: none of the procedural safeguards of the adult system yet the use of prior juvenile adjudications in enhancing a criminal sentence.

▮▮▮ Juveniles are not guaranteed all the constitutional protections afforded an adult at a state criminal trial. A juvenile does not have a constitutional right to a jury trial. *McKeiver v. Pennsylvania,* 403 U.S. 528, 543, 91 S.Ct. 1976, 1985, 29 L.Ed. 2d 647 (1971). The applicable due process standard in juvenile proceedings is fundamental fairness. *Id.*

▮▮▮ There is nothing in the record to indicate Little's juvenile adjudications were achieved without the fundamental fairness protections which must be afforded juveniles. *See e.g., In Re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25

L.Ed.2d 368 (1970). In his numerous juvenile proceedings, Little was given the assistance of counsel and the state was required to prove his guilt beyond a reasonable doubt. *See* Minn.R.Juv.Cts. 3, 4, 6, 7 (juveniles right to participate; right to counsel; right to remain silent; right to attend hearing). There is no merit to his argument that because as a juvenile he has no constitutional right to a jury trial he was denied due process and his juvenile adjudications are constitutionally infirm and therefore cannot be used to enhance his criminal history score as an adult.

■ There also is no merit to Little's contention that he was denied equal protection of the laws. Little is not set apart for different treatment on the basis of race, alienage or membership in a distinct minority. Thus, Little is not a member of a suspect class. Therefore, whether the sentencing statute passes constitutional muster on equal protection grounds depends on the existence of a rational basis supporting the legislative decision. As the Minnesota Sentencing Guidelines II.B.405 comment provides in part:

> The one point limit was deemed consistent with the purpose for including juvenile record in the criminal history—to distinguish the young adult felon with no juvenile record of felony-type behavior from the young adult offender who has a prior juvenile record of repeated felony-type behavior. The one point limit also was deemed advisable to limit the impact of findings obtained under a juvenile court procedure that does not afford the full procedural rights available in adult courts.

There is a rational basis for including juvenile adjudications in the criminal history index and in limiting their impact. Therefore, this section of the Minnesota Sentencing Guidelines passes constitutional muster.

### DECISION

Affirmed.