No. 71,985

STATE OF KANSAS, *Appellee*, v. STEVEN W. LaMUNYON, JR., *Appellant.*

(911 P.2d 151)

Opinion filed January 26, 1996.

*Rick Kittel*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Timothy J. Chambers*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant pleaded nolo contendere to one count of possession of marijuana with intent to sell and was sentenced to 3 to 10 years. After the Kansas Sentencing Guidelines Act (KSGA) became effective, the district court found defendant ineligible for retroactive sentence conversion based on his criminal history score, which included a juvenile adjudication for burglary. Defendant appealed to the Court of Appeals, arguing that the Kansas Juvenile Offenders Code (the Code), K.S.A. 38-1601 *et seq.*, prohibited juvenile adjudications from being used to calculate an offender's criminal history under the KSGA. The Court of Appeals affirmed the consideration of juvenile adjudications and remanded for further proceedings in *State v. LaMunyon*, 21 Kan. App. 2d 281, 898 P.2d 1182 (1995), and this court granted defendant's petition for review.

Steven W. LaMunyon, Jr., an adult, pleaded nolo contendere to possession of marijuana with intent to sell, a class C felony. He was sentenced to a term of incarceration of 3 to 10 years on May 7, 1993. After the KSGA became effective, the defendant's crime of conviction was determined to be a severity level 3 crime on the

drug grid. The Department of Corrections (DOC) noted that the defendant's criminal history included two juvenile adjudications for theft and one for attempted criminal damage to property. Based on a criminal history of 3 person and selected misdemeanors (level "H"), the DOC issued a sentencing guidelines report showing the defendant to be eligible for sentence conversion. See K.S.A. 1993 Supp. 21-4724(b) (level 3-H on the drug grid is eligible for sentence conversion).

The State filed a motion challenging LaMunyon's eligibility for conversion and the criminal history as stated in the guidelines report. The district court found that the defendant's criminal history included an additional juvenile adjudication for burglary that had not been considered by the DOC, an adjudication which raised his criminal history score to "D" (juvenile adjudication for one person felony). The district court held that the defendant was not eligible for retroactive sentence conversion under the KSGA because of the juvenile adjudication for burglary. See K.S.A. 1993 Supp. 21-4724(b) (only levels 3-H, 3-I, 4-G, 4-H, and 4-I on the drug grid are eligible for sentence conversion). The defendant appealed.

In the Court of Appeals, LaMunyon acknowledged that the legislature provided in the KSGA that juvenile adjudications would be considered in calculating criminal history and agreed that he was ineligible for conversion if his juvenile adjudication for burglary was considered as part of his criminal history. However, LaMunyon argued that under the Code, juvenile adjudications cannot be considered in calculating an adult's criminal history. The Court of Appeals rejected the defendant's arguments and determined that LaMunyon's prior juvenile adjudications were to be considered in determining his criminal history score for retroactive sentence conversion under the KSGA and, under the facts, the district court had correctly concluded that the defendant was not eligible for a sentence conversion. 21 Kan. App. 2d at 282-86. This court granted the defendant's petition for review of this issue.

Consideration of juvenile adjudications in calculating an offender's criminal history under the KSGA could result in an increased criminal history score and therefore an enhanced sentence for the adult conviction under the KSGA. Can prior juvenile adjudications

be used in calculating an offender's criminal history score under the KSGA? The question is one of first impression for this court.

The defendant acknowledges that the KSGA requires consideration of his juvenile adjudications. However, the defendant makes three arguments against the KSGA's consideration of juvenile adjudications: (1) Use of prior juvenile adjudications conflicts with the Kansas Juvenile Offenders Code; (2) consideration of juvenile adjudications violates the due process clause because there is no right to a jury trial in juvenile proceedings; and (3) consideration of juvenile adjudications violates the prohibition against ex post facto laws.

### Juvenile Code

When enacting the KSGA in 1992 the legislature expressly required the consideration of certain juvenile adjudications when determining an offender's criminal history score. See K.S.A. 1993 Supp. 21-4703(d), K.S.A. 1993 Supp. 21-4709, K.S.A. 1993 Supp. 21-4710, K.S.A. 1993 Supp. 21-4711, K.S.A. 1993 Supp. 21-4714(b)(5). The defendant's first argument is that the KSGA provision requiring consideration of juvenile adjudications in calculating criminal history conflicts with the Code. K.S.A. 38-1601 states:

"In no case shall any order, judgment or decree of the district court, in any proceedings under the provisions of this code, be deemed or held to import a criminal act on the part of any juvenile . . . ."

The defendant argues this language prohibits juvenile adjudications from having any criminal implications whatsoever. In *State v. Muhammad*, 237 Kan. 850, Syl. ¶ 2, 703 P.2d 835 (1985), this court noted that under Kansas statutes, a juvenile proceeding is considered a civil proceeding of a protective nature totally divorced from any criminal implication. Based on a similar rationale, the defendant contends prior juvenile adjudications under the Code cannot be used to calculate an adult offender's "criminal" history score under the KSGA.

In support of this argument the defendant relies on the rule of statutory construction that where a statute dealing generally with a subject and a statute dealing specifically with a certain phase of the subject are conflicting, the more specific statute generally con-

trols unless the legislature intended otherwise. *State v. Reed*, 254 Kan. 52, Syl. ¶ 1, 865 P.2d 191 (1993); see *Carmichael v. State*, 255 Kan. 10, 15, 872 P.2d 240 (1994). The defendant reasons that the Code, which was enacted prior to the KSGA, is more specific than the KSGA because the Code deals specifically with the prosecution and disposition of juvenile offenders, whereas the KSGA deals generally with adult criminal acts.

In addressing this argument, the Court of Appeals noted that *State v. Ward*, 20 Kan. App. 2d 238, 886 P.2d 890 (1994), *rev. denied* 257 Kan. 1096 (1995), had held that juvenile adjudications are not "convictions" for purposes of the Habitual Sex Offender Registration Act (the Act), K.S.A. 1993 Supp. 22-4901 *et seq.* In reaching this conclusion, the *Ward* court noted that where the language of a statute is plain and unambiguous, courts are required to give effect to that language without considering what the law should or should not be. K.S.A. 1993 Supp. 22-4902 defined habitual sex offenders as persons who are "*convicted* a second or subsequent time in separate *criminal actions* for commission of any of a sexually violent crime set forth in subsection (b)." (Emphasis added.) The *Ward* court then concluded that the legislature clearly intended that juvenile adjudications were not criminal convictions to be included as convictions under the Act.

The Court of Appeals noted that the Code was adopted in 1982, prior to the KSGA. Using the rationale of *Ward,* the Court of Appeals observed that in writing the KSGA, the legislature made specific provisions in K.S.A. 1993 Supp. 21-4710 to include juvenile adjudications as part of an offender's criminal history score in some instances. It concluded that because the legislature specifically provided in the KSGA, the subsequent enactment, that juvenile adjudications would be used in calculating an offender's criminal history score, it logically followed that the legislature intended the KSGA to be the controlling act. *LaMunyon*, 21 Kan. App. 2d at 283.

The defendant argues that the fact the KSGA was more recently enacted than the Code does not make the provisions of the KSGA controlling. LaMunyon asserts that the Court of Appeals failed to recognize that the provisions of the Code remained unchanged

despite the provisions enacted by the legislature in the KSGA. Therefore, according to the defendant, if the legislature had intended to include juvenile adjudications under the Code in calculating a criminal history score under the KSGA, the legislature would have amended the Code in the sections that specifically deal with juvenile adjudications and their consequences.

The fallacy with this argument is that the defendant equates the term "criminal act" or "criminal conviction" with "criminal history." It is well established that a juvenile adjudication is not a "criminal conviction." See *State v. Fountaine*, 196 Kan. 638, 414 P.2d 75 (1966) (construing Federal Juvenile Delinquency Act [FJDA] in harmony with the predecessor to the Code; juvenile adjudication under the FJDA is not a "prior conviction of a felony" under the Kansas Habitual Criminal Act); *In re J.E.M.*, 20 Kan. App. 2d 596, 890 P.2d 364 (1995) (juvenile adjudications cannot be counted as prior "convictions" for purposes of enhancing the crime severity level of theft); *Ward*, 20 Kan. App. 2d 238 (juvenile adjudication is not a prior "conviction" under Habitual Sex Offender Registration Act); *State v. Smith*, 18 Kan. App. 2d 297, 851 P.2d 397 (1993) (person with a juvenile adjudication for an offense which would be a felony if committed by an adult has not been "convicted" of a felony and is entitled to the statutory presumption of probation or community corrections unless the presumption is overcome). When specifying in the KSGA that "criminal history" includes specific juvenile adjudications and criminal convictions (see K.S.A. 1993 Supp. 21-4703[d]), the Kansas Legislature was aware that a juvenile adjudication was not a criminal conviction. See *Ward*, 20 Kan. App. 2d at 244. The mere fact that a juvenile adjudication is not a criminal conviction does not prohibit using a juvenile adjudication in calculating a criminal history score for purposes of sentencing an adult under the KSGA.

Other courts have reached similar conclusions. See *e.g.*, *U.S. v. Bucaro*, 898 F.2d 368 (3d Cir. 1990) (Pennsylvania law treats a juvenile adjudication differently than a criminal conviction, but the juvenile law does permit the use of juvenile adjudications for the purposes of inclusion in a presentence investigation upon conviction of a felony; juvenile adjudications properly factored into cal-

culation of defendant's criminal history category under the federal sentencing guidelines); *State v. Little,* 423 N.W.2d 722 (Minn. App. 1988) (use of juvenile adjudications in computing criminal history score is not inconsistent with the purpose of the Minnesota Juvenile Court Act; Act itself permits use of juvenile adjudications to determine a proper sentence); *Com. v. Smith,* 333 Pa. Super. 179, 481 A.2d 1365 (1984) (Pennsylvania Juvenile Act itself carves out an exception to the use of a juvenile's record in a subsequent adult proceeding; sentencing court required to consider juvenile adjudications under sentencing guidelines).

We note that the Kansas Legislature permitted consideration of juvenile adjudications in the sentencing of adult offenders prior to the adoption of the KSGA. K.S.A. 1993 Supp. 21-4606a has provided since its enactment in 1984 that in determining whether the presumption for probation applies for certain offenders, "the court shall consider any prior record of the person's having been convicted or having been adjudicated to have committed, while a juvenile, an offense which would constitute a felony if committed by an adult." Likewise, K.S.A. 1993 Supp. 21-4606b used similar language when enacted in 1989 for determining whether presumptive assignment to community corrections applied to certain offenders by requiring the court to consider "any prior record of the person's having been convicted of a felony or having been adjudicated to have committed, while a juvenile, an offense which would constitute a felony if committed by an adult."

Finally, since its enactment in 1982 the Code has permitted use of expunged juvenile records in the sentencing of subsequent juvenile dispositions and adult criminal convictions. K.S.A. 38-1610(e) states:

"Upon entry of an order expunging records or files, the offense which the records or files concern shall be treated as if it never occurred, except that . . . (2) upon conviction of a crime or adjudication in a subsequent action under this code the offense may be considered in determining the sentence to be imposed or disposition to be made."

Thus, the legislature permitted consideration of even expunged juvenile adjudications in both future juvenile dispositions and adult sentencing before the KSGA was enacted. When enacting K.S.A.

38-1610(e) the legislature recognized that juvenile adjudications would be considered in determining the sentence to be imposed on adult offenders despite the statement in 38-1601 which the defendant contends is to the contrary.

The fact that a juvenile adjudication is not a "criminal act" has not been interpreted to mean that a juvenile adjudication can have no impact upon the sentence for a subsequent "criminal conviction." Considering a juvenile adjudication in calculating an offender's criminal history score under the KSGA does not turn that adjudication into a criminal act. The terms "criminal act" and "criminal history score" simply mean different things. The KSGA's requirement that juvenile adjudications be considered in calculating an offender's criminal history score is not inconsistent or in conflict with the statement in K.S.A. 38-1601 that a juvenile adjudication shall not be deemed or held to import a criminal act. The fact that a juvenile adjudication cannot be deemed to import a "criminal act" under K.S.A. 38-1601 for purposes of the juvenile proceedings does not preclude consideration of an adjudication in determining a defendant's sentence according to the KSGA.

The defendant also argues that when enacted, the Code was not intended to be punitive or have a subsequent effect upon those who were no longer subject to it. He asserts that juvenile adjudications had no such effect until the KSGA was later enacted, bringing juvenile adjudications back to haunt those who had been subject to the Code and had relied on the Code's provision that they had no criminal effect. Presumably, the defendant's appellate counsel asserts, when the defendant was subject to the Code his attorney advised him that his juvenile adjudications would have no future effect. The defendant argues that the KSGA has rendered his reliance on his prior counsel's advice meaningless and that a procedure designed to achieve the best interests for the juvenile has become a punitive act with consequences for subsequent adult criminal convictions.

This argument is similar to one made in *Ingraham v. State*, 502 So. 2d 987 (Fla. Dist. App. 1987). There, an adult defendant sought to set aside his pleas to prior juvenile adjudications if they were considered in determining his sentence for a subsequent adult

crime. The Florida court held that the defendant's guilty pleas entered in the juvenile adjudications upon his attorney's correct advice that the legislature had provided that juvenile adjudications could not be used in enhancing a subsequent adult conviction would be rendered involuntary if the juvenile adjudications were subsequently considered in determining the adult sentence.

*Ingraham* is distinguishable. The defendant's argument is correct as to Florida law and the Kansas Habitual Sex Offender Registration Act but is flawed as to the KSGA. As previously discussed, the Kansas Legislature permitted consideration of juvenile adjudications in subsequent adult sentencing proceedings before the defendant's juvenile adjudications occurred (1986 and 1987) and before the KSGA was adopted. Due process does not require that a defendant be informed of all collateral consequences which may result from a guilty plea. See *Cox v. State*, 16 Kan. App. 2d 128, 130-31, 819 P.2d 1241 (1991), *rev. denied* 250 Kan. 804 (1992). One of the collateral consequences of which a defendant need not be informed is the possibility that the conviction may be used to enhance the sentence for a later crime. See *City of Ottawa v. Lester*, 16 Kan. App. 2d 244, 246-47, 822 P.2d 72 (1991). Similarly, due process does not require that a juvenile be informed that an uncontested or stipulated adjudication could be used to determine the sentence for a future crime.

We disagree with the defendant's argument that the Code is a more specific legislative statement than the KSGA. The Kansas Legislature was well aware of the Code when it subsequently allowed prior juvenile adjudications to be included in the guidelines of the KSGA. The Code is a general statement of public policy as to the effect of juvenile adjudications, whereas the KSGA sets out specific exceptions to K.S.A. 38-1601.

## Jury Trial

A juvenile has no constitutional right to a jury trial. *McKeiver v. Pennsylvania*, 403 U.S. 528, 543, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971). Kansas law permits a jury trial in juvenile proceedings only for offenses which would be felony offenses if committed by an

adult. K.S.A. 38-1656; see *Findlay v. State*, 235 Kan. 462, 463-64, 681 P.2d 20 (1984).

In the Court of Appeals, the defendant contended that the KSGA's consideration of a juvenile adjudication which lacked the right to a jury trial is analogous to the use of an uncounseled conviction to enhance the sentence imposed for a subsequent crime. In *Baldasar v. Illinois*, 446 U.S. 222, 64 L. Ed. 2d 169, 100 S. Ct. 1585 (1980), the United States Supreme Court held that a constitutionally valid but uncounseled misdemeanor conviction could not be collaterally used to convert a second misdemeanor conviction into a felony conviction under the applicable Illinois sentencing enhancement statute. Following the *Baldasar* rationale, the defendant asserted that if a prior uncounseled conviction cannot be used to enhance his sentence for a subsequent conviction, a prior nonjury juvenile adjudication cannot be used to enhance the sentence under the KSGA for a subsequent adult conviction.

The defendant urged the Court of Appeals to follow the reasoning of the dissent in *State v. Stewart*, 123 Or. App. 147, 859 P.2d 545 (1993), *aff'd State v. Stewart/Billings*, 321 Or. 1, 892 P.2d 1013 (1995), in which a majority held that juvenile adjudications could be used to calculate an offender's criminal history score under the Oregon sentencing guidelines even though there was no right to a jury trial in the juvenile proceeding. The *Stewart* dissent argued that there was no distinction between enhancing a sentence based on a juvenile adjudication which, though constitutional, did not have the protection of a jury trial and enhancing a sentence based on an uncounseled, though constitutional, misdemeanor conviction which was prohibited by *Baldasar*. 123 Or. App. at 154-56.

In rejecting the defendant's argument, the Court of appeals recognized that the flaw in the defendant's argument was the reliance on *Baldasar*. The Court of Appeals pointed out that *Baldasar* was overruled by the United States Supreme Court in *Nichols v. United States*, 511 U.S. 738, 128 L. Ed. 2d 745, 114 S. Ct. 1921 (1994). In *Nichols*, the Supreme Court determined that an uncounseled conviction could be used to enhance the sentence for a subsequent offense even though the subsequent sentence entails imprisonment. (See *Scott v. Illinois*, 440 U.S. 367, 59 L. Ed. 2d 383, 99 S.

Ct. 1158 [1979]). The Court observed that enhancement statutes, whether in the nature of criminal history provisions such as those contained in sentencing guidelines schemes, or recidivist statutes which are common in state criminal laws, do not change the penalty imposed for the earlier conviction. 511 U.S. at 747. The Court concluded that while imprisonment could not be imposed for a constitutional but uncounseled conviction, that uncounseled conviction could be used at a later sentencing hearing even though a sentence of imprisonment would result.

In his petition for review, the defendant acknowledges that *Baldasar* was overruled by *Nichols*. However, he asserts that "it continues to be Kansas law that uncounseled convictions are not used to enhance a subsequent sentence." This assertion is also flawed. Two weeks before LaMunyon filed his petition for review, this court decided *State v. Delacruz*, 258 Kan. 129, 899 P.2d 1042 (1995).

The *Delacruz* court held that an uncounseled misdemeanor conviction could properly be used in determining an offender's criminal history under the KSGA. Using the rationale expressed in *Nichols*, the court concluded that the use of an uncounseled misdemeanor conviction which was constitutional could be used in determining a defendant's criminal history under the KSGA even though it has the effect of enhancing a subsequent sentence under the KSGA. See *Nichols*, 511 U.S. at 747-48. The *Delacruz* court noted that prior uncounseled misdemeanor convictions are constitutional if no jail time was imposed. If such convictions are constitutional, those convictions can be used for subsequent proceedings under the KSGA. The *Delacruz* court recognized that while the uncounseled misdemeanor conviction is used to enhance the present sentence, the sentence imposed for the present crime does not increase the penalty for the prior misdemeanor conviction. Under such circumstances, the defendant is being punished based on the current conviction. 258 Kan. at 135-36. The *Delacruz* court did recognize that an uncounseled misdemeanor conviction which resulted in a sentence of imprisonment for the uncounseled crime was unconstitutional and could not be

used in calculating a defendant's criminal history for a subsequent crime. 258 Kan. at 136.

Other courts reached the same conclusion despite arguments similar to the defendant's, even before *Baldasar* was overruled. See *McCullough v. Singletary*, 967 F.2d 530 (11th Cir. 1992) (defendant's due process rights not violated by using prior, nonjury, juvenile adjudications to enhance criminal history level under Florida sentencing guidelines); *United States v. Williams*, 891 F.2d 212 (9th Cir. 1989) (same, under federal sentencing guidelines); *State v. Little*, 423 N.W.2d 722 (same, under Minnesota sentencing guidelines).

Here, the defendant's juvenile adjudications were constitutional even if he had no right to a jury trial in those proceedings. Because the juvenile adjudications were not constitutionally infirm, they may be used in calculating the defendant's criminal history score under the KSGA.

## Ex Post Facto

The defendant's final argument is that using juvenile adjudications in calculating criminal history violates the constitutional prohibition against ex post facto laws. An ex post facto violation occurs when a new law is retroactively applied to events that occurred before its enactment and the new law disadvantages the offender affected by it. *State v. Fierro*, 257 Kan. 639, 646, 895 P.2d 186 (1995). See *Weaver v. Graham*, 450 U.S. 24, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981).

The defendant argues that the KSGA operates retroactively because it gives criminal effect to juvenile adjudications which occurred prior to the enactment of the KSGA. He contends that he is disadvantaged because if his juvenile adjudications were not included in his criminal history score, he would be entitled to the benefit of a sentence conversion. The Court of Appeals rejected the defendant's argument by concluding that LaMunyon was not being punished for his prior juvenile adjudications when calculating his criminal history under the KSGA. Moreover, the court noted that the inability to convert a sentence under the KSGA results in the defendant serving only the sentence imposed under

the prior law and not an enhanced sentence. *LaMunyon*, 21 Kan. App. 2d at 286.

A similar argument was addressed in *Bucaro*, 898 F.2d 368. After observing that the defendant was not being punished for his juvenile conduct and that his current sentence was based on the law in effect at the time he committed the current offense, the *Bucaro* court rejected an ex post facto argument as to the use of prior juvenile adjudications in calculating criminal history for adult offenders under the federal sentencing guidelines. 898 F.2d at 371.

The *Bucaro* analysis is similar to that previously used by Kansas appellate courts in addressing prior Kansas habitual criminal laws. In *State v. Jones*, 214 Kan. 568, 521 P.2d 278 (1974), the defendant was convicted in 1971 of driving with a suspended license, a misdemeanor. In 1972, the Kansas Legislature amended the classification of the offense to provide that a first conviction was a class B misdemeanor, a second was a class A misdemeanor, and a third or subsequent conviction was a class E felony. The defendant was convicted a second time in 1972, and he committed a third offense in 1973. At his trial for the third offense, the defendant stipulated to the two prior convictions. Upon his third conviction, he was sentenced as a felon. 214 Kan. at 569. In holding that the statute classifying the crime based on the number of prior convictions was a self-contained habitual criminal statute, the *Jones* court stated that a showing of prior convictions goes only to the question of defendant's status. The court noted that the prior conviction or convictions under the statute prescribes sequentially increased punishment for repeat offenders. It pointed out that a repeat offender was not punished for the prior offense or offenses, but the legislature declared that repeated violations justified an enhanced penalty. 214 Kan. at 570. Without further discussion, the *Jones* court rejected the defendant's argument that the retroactive application of the statute rendered it an ex post facto law. 214 Kan. at 570. See *State v. Campbell*, 9 Kan. App. 2d 474, 681 P.2d 679 (1984) (a provision mandating increased penalties for repeat drunk driving offenders is not an ex post facto law even though the prior convictions are for violations of statutes or ordinances which contained no similar provisions).

In *State v. Landon*, 21 Kan. App. 2d 486, 900 P.2d 254 (1995), the Court of Appeals considered an argument that classifying two prior burglary convictions as person felonies in calculating an offender's criminal history score under the KSGA violated the prohibition against ex post facto laws because the offense was a property, not a person, crime at the time the prior crimes were committed. Classification of the prior burglaries as person, rather than nonperson, crimes resulted in a higher criminal history score and therefore an increased sentence under the KSGA. The *Landon* court rejected this argument, concluding that the defendant was not being punished for his prior burglary convictions; rather, his prior convictions were used to establish a sentencing classification for the current offense. 21 Kan. App. 2d at 488.

The defendant is correct that the KSGA was not in effect at the time of his juvenile adjudications. He is also correct that consideration of juvenile adjudications in calculating an offender's criminal history could result in an increased criminal history score and therefore an increased sentence for the adult offense under the KSGA. However, the KSGA does not operate retrospectively to punish the activity which occurred prior to the effective date of the KSGA and therefore does not violate the prohibition against ex post facto laws.

The analysis applied in *Bucaro, Jones, Campbell,* and *Landon* applies here as well. The defendant is not being punished for his juvenile adjudications. The adjudications are merely being used to calculate the defendant's criminal history score for the purpose of determining the guidelines sentence for his current offense. That the guidelines sentence is greater upon inclusion of the juvenile adjudications in his criminal history score than it would be without considering the adjudications does not mean the defendant is being punished for the prior adjudications. The defendant's ineligibility for sentence conversion is not a punishment for his prior juvenile adjudications but rather is a result of his current status as a repeat offender. The consideration of juvenile adjudications which occurred before the effective date of the KSGA in calculating an offender's criminal history score under the KSGA is not a violation of the prohibition against ex post facto laws.

### Conclusion

The Court of Appeals correctly held that the defendant's juvenile adjudications may properly be used in determining his criminal history score under the KSGA.

We additionally note, as pointed out by the Court of Appeals, that the record is not clear whether the defendant's prior juvenile adjudication for burglary was of a dwelling. The matter must be remanded to the district court to determine whether the juvenile adjudication for burglary was a person or nonperson felony.

Judgment of the Court of Appeals is affirmed; judgment of the district court is affirmed in part and remanded for further proceedings.