(36 P.3d 839)
No. 86,104

STATE OF KANSAS, *Appellee,* v. CAGER J. SPATES, *Appellant.*

Opinion filed December 14, 2001.

*Sandra Carr,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Angela M. Wilson,* assistant district attorney, *Christine Kenney,* district attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before GREEN, P.J., KNUDSON, J., and STEPHEN D. HILL, District Judge, assigned.

GREEN, J.: Cager J. Spates was convicted of aggravated assault and was sentenced to 22 months in prison. On appeal, Spates contends that the trial court imposed an illegal sentence when it calculated his criminal history using a juvenile adjudication. We disagree and affirm.

Spates was charged with attempted voluntary manslaughter and criminal possession of a firearm as a result of events which occurred on February 27, 2000. Under a plea agreement, Spates entered a guilty plea to the charge of aggravated assault under K.S.A. 21-3410(a), and the State dismissed the remaining charges. The trial court accepted Spates' guilty plea and found him guilty.

A presentence investigation report showed Spates' criminal history included no adult convictions, but did include a juvenile adjudication for aggravated battery, a person felony. The juvenile adjudication was not decayed.

At sentencing, Spates objected to his criminal history, arguing that the juvenile adjudication should not have been used in calculation of the criminal history score. The trial court found that under the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-

4701 *et seq.*, aggravated assault was a severity level 7 offense, that Spates' criminal history score was D, and that the sentencing range for prison was 22, 24, and 26 months with presumptive imprisonment because a firearm was used in the commission of the felony. The trial court denied Spates' motion for a dispositional departure and sentenced him to the mitigated term of 22 months' imprisonment.

Spates argues that the trial court erred in determining that his criminal history category was D. He insists that his juvenile adjudication should not have been included in his criminal history because it resulted from a proceeding in which he did not have the right to a jury trial. To support this argument, Spates relies upon *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Spates contends his criminal history is category I and his presumptive sentence is 7 to 9 months' imprisonment under K.S.A. 2000 Supp. 21-4704(a).

Whether a statute is unconstitutional is a question of law subject to unlimited review. *State v. Heironimus*, 262 Kan. 796, 802, 941 P.2d 1356 (1997). When a statute is challenged as unconstitutional, this court must search for a way to uphold the statute. *State v. Gould*, 271 Kan. 394, 405, 23 P.3d 801 (2001).

Spates has not specified which statute he is challenging on constitutional grounds. The statute which requires the inclusion of juvenile adjudications in calculating a defendant's criminal history is K.S.A. 21-4710. The pertinent portion of the statute provides:

"(a) Criminal history categories contained in the sentencing guidelines grid for nondrug crimes . . . are based on the following types of prior convictions: . . . person felony juvenile adjudications, nonperson felony juvenile adjudications . . . person misdemeanor juvenile adjudications, nonperson class A misdemeanor juvenile adjudications [and] select class B nonperson misdemeanor juvenile adjudications . . . ."

Spates has not specifically articulated how this statute is unconstitutional except to cite *Apprendi*. We assume Spates is challenging K.S.A. 21-4710 upon the constitutional challenges raised in *Apprendi*. The issue in *Apprendi* was "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sen-

tence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." 530 U.S. at 469. Apprendi relied upon a juvenile case where the United States Supreme Court held that " 'the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the accused] is charged.' " 530 U.S. at 477 (quoting *In re Winship*, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 [1970]).

In *Apprendi*, a state statute authorized a prison term of 5 to 10 years for a second-degree offense of possession of a firearm for an unlawful purpose and a prison term of 3 to 5 years for a third-degree offense of possession of a firearm for an unlawful purpose. Another statute, described as a "hate crime" statute, provided for an increased prison term of 10 to 20 years if the trial judge found by a preponderance of the evidence that the crime was committed with the purpose to intimidate an individual or group because of race, color, gender, handicap, religion, sexual orientation, or ethnicity.

Apprendi was charged with numerous offenses regarding several shootings and the unlawful possession of weapons. None of the offenses referred to the hate crime statute or alleged that he acted with a racially biased purpose. After Apprendi was arrested, he stated he did not want the African-American occupants of the house living in the white neighborhood. Under a plea agreement, Apprendi pleaded guilty to two counts of second-degree possession of a firearm for an unlawful purpose and one count of third-degree unlawful possession of an antipersonnel bomb. At sentencing, Apprendi argued the hate crime statute was unconstitutional because the finding of bias upon which the hate crime sentence was based must be proven to a jury beyond a reasonable doubt pursuant to *Winship*. After considering the evidence, the judge rejected Apprendi's constitutional challenge to the statute and concluded his actions were done for the purpose of intimidation and the hate crime statute applied. Apprendi was sentenced to a 12-year prison term on one of the second-degree offenses and to shorter concurrent sentences on the remaining two offenses.

The United States Supreme Court noted that judges have long exercised discretion by taking into consideration various factors relating both to the offense and to the offender when imposing a sentence within the statutory limits of an individual case. 530 U.S. at 481. However, the principles of the right to a jury trial can be lost by erosion when a legislative scheme removes the jury from determining a fact that, if found to exist, exposes a defendant to a penalty exceeding the maximum which a defendant would have received if punished based on the facts reflected only in the jury verdict. 530 U.S. at 482-83. The Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

Our Supreme Court adopted the rationale of *Apprendi* in *Gould*, 271 Kan. at 411. Gould was convicted of three counts of child abuse, each a severity level 5 person felony. Because Gould had a criminal history score of I, the sentencing range was 31-32-34 months' imprisonment. The State moved for an upward departure because the victims were Gould's children, the abuse to the infant twins was severe, and Gould showed no emotion or remorse until her conviction. The trial court found the aggravating factors were substantial and compelling reasons, granted the motion, and sentenced Gould to two consecutive prison terms of 68 months on the offenses involving the twins and a concurrent prison term of 34 months on the offense involving the third child.

Gould argued K.S.A. 2000 Supp. 21-4716 was flawed because it allowed for an upward departure based upon aggravating factors which were "facts, other than that of a prior conviction, not found by a jury beyond a reasonable doubt, [and] used to justify imposing a sentence beyond the statutory maximum for the underlying crime." 271 Kan. at 411. This argument mirrored the rationale in *Apprendi*.

The *Gould* court determined the jury's verdict authorized a sentence of 31 to 34 months for each child abuse conviction and the two 68-month sentences exposed Gould to punishment greater than that authorized by the jury's verdict. It held the scheme for imposing upward departure sentences under K.S.A. 2000 Supp.

21-4716 violated the due process and jury trial rights contained in the Sixth and Fourteenth Amendments to the United States Constitution and vacated Gould's sentence. 271 Kan. at 414.

Clearly, the courts in *Apprendi* and *Gould* limited the requirement for a jury determination to *facts other than a prior conviction* and Spates' complaint involves only a prior conviction. However, Spates also relies upon language in *Apprendi* regarding a prior decision with the same issue involving recidivism. The *Apprendi* Court stated its decision in *Almendarez-Torres v. United States,* 523 U.S. 224, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998), was "at best an exceptional departure from the historical practice that we have described." 530 U.S. at 487.

In *Almendarez-Torres,* under subsection (a) of a federal statute, an alien who was once deported was prohibited from returning to the United States without special permission, and a conviction under this subsection carried a maximum prison term of 2 years. Under subsection (b)(2) of the same statute, the maximum prison term was 20 years for " 'any alien described' in subsection (a), if the initial 'deportation was subsequent to a conviction for commission of an aggravated felony.' " 523 U.S. at 226.

Almendarez-Torres was charged with violating the statute, but the indictment did not refer to a subsection of the statute or to any prior felony convictions. Almendarez-Torres entered a plea of guilty and admitted he had been previously deported because of three aggravated felony convictions and that he had later returned to the United States. At sentencing, Almendarez-Torres argued he could not be sentenced to more than 2 years' imprisonment because the indictment did not set forth all elements of the crime enunciated in subsection (b). The *Almendarez-Torres* Court had to determine whether subsection (b) defined a separate crime or authorized an enhanced penalty.

The Court found the relevant statutory subject matter was recidivism, which is a typical sentencing factor. 523 U.S. at 230. It found subsection (b) referred only to punishment for a felon who had been described under subsection (a). The Court stated the reference in subsection (b) to subsection (a) did not import the elements in subsection (a) and set forth a separate crime. The *Al-*

*mendarez-Torres* Court held subsection (b) was a sentencing factor. 523 U.S. at 230-35.

In *Apprendi*, the Court noted the question in *Almendarez-Torres* concerned the sufficiency of the indictment and its decision had turned upon the fact that the additional prison sentence was based upon the defendant's prior convictions of a serious crime. It believed any due process and Sixth Amendment concerns were mitigated by procedural safeguards attached to the prior convictions, and Almendarez-Torres did not challenge the accuracy of his prior convictions. *Apprendi*, 530 U.S. at 488. The *Apprendi* Court then stated: "[I]t is arguable that *Almendarez-Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested . . . ." 530 U.S. at 489-90. Because Apprendi did not contest the validity of the decision in *Almendarez-Torres*, the *Apprendi* Court did not revisit its previous decision in *Almendarez-Torres* and, instead, treated it as a narrow exception to the general rule that a defendant must be proven guilty beyond a reasonable doubt on all elements of an offense. 530 U.S. at 490.

Even if the United States Supreme Court overruled *Almendarez-Torres*, the change would not assist Spates' argument. It would only mean that the prior aggravated battery felony convictions were elements of the current charged offense of illegal re-entry into the country which would have to be proven in order to convict on the current offense.

The language in *Apprendi* about *Almendarez-Torres* does not affect the result in this case. Here, Spates' prior juvenile adjudication was not an element of his current offense—aggravated assault. To convict Spates of aggravated assault, the State had to prove that he intentionally placed another person in reasonable apprehension of immediate bodily harm through the use of a deadly weapon. See K.S.A. 21-3408; K.S.A. 21-3410(a). Clearly, these statutes do not require the State to prove Spates had a juvenile adjudication. As a result, *Apprendi* does not apply to this situation.

Nevertheless, Spates believes the increase in his sentence by 13 months due to the inclusion of his juvenile adjudication in his crim-

inal history violates *Apprendi* because he did not have a right to a jury trial when that adjudication was made. Spates contends that the juvenile adjudication should not be included in his adult criminal history because it is not a criminal conviction and he did not have a right to a jury trial. He cites *State v. LaMunyon*, 259 Kan. 54, 59, 911 P.2d 151 (1996), where the court stated: "It is well established that a juvenile adjudication is not a 'criminal conviction.' [Citations omitted.]"

The *LaMunyon* court also noted juveniles have no constitutional right to a jury trial, citing *McKeiver v. Pennsylvania*, 403 U.S. 528, 543, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971). 259 Kan. at 62. The *LaMunyon* court further noted, under K.S.A. 38-1656, a jury trial is allowed in juvenile proceedings only for offenses which would be felony offenses if committed by an adult, citing *Findlay v. State*, 235 Kan. 462, 463-64, 681 P.2d 20 (1984). 259 Kan. at 62-63. More specifically, *Findlay* held that granting a jury trial under K.S.A. 38-1656 is entirely at the trial court's option, is not a statutory right of the juvenile offender or the State, and is not reviewable upon appeal. 235 Kan. at 466.

What Spates ignores is that one of LaMunyon's issues was whether juvenile adjudications which were not based upon jury trials should be excluded from the KSGA criminal history score. LaMunyon argued that using such juvenile adjudications in his KSGA criminal history score was analogous to using an uncounseled conviction to enhance a sentence imposed for a subsequent crime.

LaMunyon's argument was flawed because he relied upon *Baldasar v. Illinois*, 446 U.S. 222, 64 L. Ed. 2d 169, 100 S. Ct. 1585 (1980), which was overruled in *Nichols v. United States*, 511 U.S. 738, 128 L. Ed. 2d 745, 114 S. Ct. 1921 (1994). Kansas followed *Nichols* in *State v. Delacruz*, 258 Kan. 129, 899 P.2d 1042 (1995). See *LaMunyon*, 259 Kan. at 63-64. Relying upon the rationale of *Nichols*, the *Delacruz* court "concluded that the use of an uncounseled misdemeanor conviction which was constitutional [*i.e.*, no jail time was imposed] could be used in determining a defendant's criminal history under the KSGA even though it has the effect of enhancing a subsequent sentence under the KSGA. [Citation omit-

ted.]" *LaMunyon*, 259 Kan. at 64. The result of *Delacruz* was that "[constitutional] convictions can be used for subsequent proceedings under the KSGA." *LaMunyon*, 259 Kan. at 64.

The *LaMunyon* court explained that although the uncounseled conviction "is used to enhance the present sentence, the sentence imposed for the present crime does not increase the penalty for the prior misdemeanor conviction. Under such circumstances, the defendant is being punished based on the current conviction. [*Delacruz*,] 258 Kan. at 135-36." 259 Kan. at 64. If, however, the uncounseled conviction resulted in a sentence of imprisonment, then it was unconstitutional and could not be included in the calculations for the criminal history of a subsequent crime. 259 Kan. at 64-65.

The *LaMunyon* court held: "[T]he defendant's juvenile adjudications were constitutional even if he had no right to a jury trial in those proceedings. Because the juvenile adjudications were not constitutionally infirm, they may be used in calculating the defendant's criminal history score under the KSGA." 259 Kan. at 65; see also *State v. Lanning*, 260 Kan. 815, 819, 925 P.2d 1145 (1996) ("The KSGA's requirement that juvenile adjudications be considered in calculating an offender's criminal history score is not inconsistent or in conflict with the statement in K.S.A. 38-1601 that a juvenile adjudication shall not be deemed or held to import a criminal act.").

Although a juvenile does not have a right to a jury trial, other constitutional protections during the adjudicatory stage of a juvenile proceeding are: notice of charges, right to counsel, right of confrontation and examination of witnesses, and the privilege against self-incrimination. *Winship*, 397 U.S. at 368. The Kansas Juvenile Justice Code (formerly known as the Kansas Juvenile Offenders Code), K.S.A. 38-1601 *et seq.*, requires those same constitutional protections. See K.S.A. 38-1606 (right to an attorney); K.S.A. 38-1612 and K.S.A. 38-1622 (complaint and notice of charges); K.S.A. 38-1633(b)(1)-(6) (before entering plea, juvenile informed of all rights—the nature of the charges, the presumption of innocence, the right to trial and to confront and cross-examine witnesses, the right to subpoena witnesses, the right not to testify,

and the sentencing alternatives); K.S.A. 38-1653 (the rules of evidence of the code of civil procedure apply); K.S.A. 38-1654 (standard of proof beyond a reasonable doubt).

Because Spates has not shown his juvenile adjudication was unconstitutional, the rationale of *LaMunyon* applies and Spates' juvenile adjudication was correctly included in his KSGA criminal history score.

Spates further argues that use of his juvenile adjudication is contrary to the Kansas Juvenile Offenders Code. To support his argument, Spates notes that K.S.A. 38-1601 (Furse 1993) provided: "In no case shall any order, judgment or decree of the district court, in any proceedings under the provisions of this code, be deemed or held to import a criminal act on the part of any juvenile." Spates contends that because the Kansas Juvenile Offenders Code prohibited any juvenile adjudication from being construed as a criminal act, there should not be any criminal implications from juvenile adjudications and they should not be used to calculate a defendant's criminal history.

Spates acknowledges that this issue was previously decided by our Supreme Court in *LaMunyon*. He nevertheless raises the issue in this court to preserve the question for federal review.

The *LaMunyon* court held:

"Considering a juvenile adjudication in calculating an offender's criminal history score under the Kansas Sentencing Guidelines Act does not turn that adjudication into a criminal act. The terms 'criminal act' and 'criminal history score' mean different things. The Kansas Sentencing Guidelines Act's requirement that juvenile adjudications be considered in calculating an offender's criminal history score is not inconsistent or in conflict with the statement in K.S.A. 38-1601 that a juvenile adjudication shall not be deemed or held to import a criminal act." 259 Kan. 54, Syl. ¶ 4.

*LaMunyon* further held that "[t]he consideration of juvenile adjudications which occurred before the effective date of the Kansas Sentencing Guidelines Act in calculating an offender's criminal history score under the Act is not a violation of the prohibition against ex post facto laws." 259 Kan. 54, Syl. ¶ 7.

After the *LaMunyon* decision was issued, the Kansas Legislature amended K.S.A. 38-1601 to omit the portion of the statute that

prohibited any juvenile adjudication from being construed as a criminal act. See L. 1996, ch. 229, § 2.

This court is bound by our Supreme Court's holding in *LaMunyon*. We find that the use of Spates' juvenile adjudication in calculating his criminal history score was not in conflict with the Kansas Juvenile Offenders Code, nor did it violate the prohibition against ex post facto application of the law.

Affirmed.